BRIDWELL *v.* DAVIS.

4-7183                                          175 S. W. 2d 992

Opinion delivered December 6, 1943.

446

*C. A. Holland,* for appellant.

*Alton Bittle* and *J. L. Bittle,* for appellee.

McFADDIN, J.   This appeal involves two lots, each with a different line of title. In addition, there was a request for a *nunc pro tunc* order regarding each lot.

Appellant initiated this suit in the chancery court by filing against appellee a complaint entitled, "Suit to Set Aside Deeds"; and in that pleading appellant alleged that by two separate foreclosure proceedings in the Cleburne chancery court (one against C. Frauenthal and the other against R. E. Chance) and by commissioner's sales and deeds in said foreclosure, appellant became the owner of the two lots involved in this litigation, one being in Heber Springs, and the other in Shiloh. Appellant further alleged that appellee was claiming the Heber Springs lot under a void deed from the State which should be set aside; and that appellee should be required to disclose his claim of title to the other lot.

Appellant alleged that copies of the commissioner's deeds to appellant were attached as exhibits to the complaint, but sixty days after the filing of the complaint, appellant filed an amendment stating that the commissioner in chancery had "failed to execute the deeds conforming to the court's decree in both of the cases mentioned in the complaint," and plaintiff prayed that orders and deeds be made *nunc pro tunc.* Defendant filed demurrer and answer, with defenses which will appear in the discussion of the issues. A trial on the merits resulted in a decree dismissing appellant's complaint and amendment for want of equity. This appeal followed.

We will first dispose of the *nunc pro tunc* issue, since it involves both lots; and then we will dispose of the issues regarding each lot.

*The nunc pro tunc question.* Appellant claimed title to the lots by reason of two entirely separate foreclosure proceedings. As to the Heber Springs lot, he claimed that he had foreclosed his mortgage and secured a commissioner's deed in a proceeding against C. Frauenthal and wife in 1935. As to the Shiloh lot, appellant claimed he had foreclosed his mortgage and secured a commissioner's deed in a proceeding against R. E. Chance and wife in 1928. When appellant could not find his deeds, he filed an amendment to his complaint in this present case —in which J. G. Davis was the sole defendant—and thereby sought to obtain the deeds by *nunc pro tunc* orders. Relief by motion for a *nunc pro tunc* order is not an independent proceeding, but is relief to be obtained in the original proceeding. Application for a *nunc pro tunc* order is not a proceeding separate and distinct from the original action, but is merely auxiliary to the original action. *Petition of Breeding, et al.* 75 Okla. 169, 182 Pac. 899; *Miller* v. *Seiler,* 82 Ind. App. 36, 142 N. E. 719. So, if appellant considered himself entitled to any relief which an order *nunc pro tunc* could secure, he should have filed a motion in the C. Frauenthal foreclosure proceeding setting up his desired relief in that case, and likewise, he should have filed a motion in the R. E. Chance foreclosure proceeding setting up his desired relief in that case.

*Nunc pro tunc* means literally "now for then." It is to make the record speak *now* what was actually done *then.* It is based on the power inherent in a court to make its records show at a later date what actually occurred originally. Naturally, therefore, any correction in the record would be auxiliary to the original action and not be by an independent action, as appellant here attempted. The parties in the original action are entitled to notice of the filing of the motion for *nunc pro tunc* relief. This was pointed out by Mr. Justice Battle in *Simpson* v. *Talbot,* 72 Ark. 185, 79 S. W. 761: "The Chancery Court had authority to amend the record of its decree at a subsequent term, so as to make it speak the truth, but it

cannot do so without notice first given to the party against whom it is made.''

So the amendment filed in this proceeding asking for *nunc pro tunc* relief in two other cases was entirely improper, and the Chancery Court correctly denied the relief in this case. But we have examined the appeal and record here on the merits as though appellant had established his commissioner's deeds as lost instruments; and we proceed to a determination of the questions involving each lot.

### The Heber Springs Lot

I. *Appellee's Tax Title.* This was lot 1, block 65, Heber Springs, and the plaintiff (appellant) claimed under a deed executed to him by the Commissioner in Chancery in 1935 in the C. Frauenthal foreclosure; and in 1938 appellant had obtained a deed to the lot from the Commissioners of Water and Sewer District No. 1 of Heber Springs. Appellant relied solely on these conveyances. The complaint contained no further deraignment of appellant's title; but alleged that appellee had acquired a deed from the State of Arkansas in 1939 under a forfeiture for taxes of 1935. Against the tax forfeiture, appellant alleged six defects claimed to vitiate the tax sale. But there is absolutely no evidence concerning any of these defects. In other words, there is nothing to show any defects in the tax forfeiture to the State. The tax sale is valid until it is avoided, and in the absence of any proof of any defect or any irregularity in the tax forfeiture, we must conclude that the appellant failed to defeat the appellee's tax title. *Stade* v. *Berg,* 182 Ark. 118, 30 S. W. 2d 211.

II. *The Improvement District Deed.* Appellant claimed under a deed from the Commissioners of Water and Sewer District No. 1 of Heber Springs executed in 1938, but there is no proof to show for what year the property had been delinquent for the improvement district taxes, or that it was ever delinquent. There is no presumption that the improvement district foreclosure antedated the forfeiture to the State or vice versa. These are matters for proof—not presumption—and there was

no proof of any kind about the year of the improvement district delinquency. So appellant failed to offer any proof that tended to show any defect in the State deed under which appellee claimed.

III. *Adverse Possession.* Appellee's deed from the State was dated February 25, 1939, and the complaint herein was not filed until April 14, 1941. Appellee positively testified that he had held possession of the lot for over two years under his tax deed, so the decree could be affirmed because of two years' possession under the deed from the State. Section 8925 of Pope's Digest.

IV. *Disqualifying Interest of Appellee.* Appellant alleged that appellee was at one time (1935 to 1940) sheriff and collector of Cleburne county, and was thus disqualified from acquiring the lot from the State in 1939 because of § 13854 of Pope's Digest, which prohibits a collector from being interested directly or indirectly in the purchase of any property sold at collector's sale (which sale in this case occurred in 1935). This section is a part of the general revenue law, and must be read in the light of the sections preceding and following it, in order to determine its meaning. The general subject matter of these sections is the collector's sale of delinquent lands to be held in each year. Section 13853 of Pope's Digest provides that if there is no bidder, then the collector will bid in the property for the State. Section 13854 says the collector shall not bid for himself, and § 13856 requires the collector to certify to the clerk all sales, etc. It is thus apparent that the prohibition in § 13854 relates to the delinquent sale conducted by the collector in each year, and has no reference to the right of the collector, years later, to buy the property from the State in the absence of any allegation or evidence that the collector influenced the forfeiture to the State or hindered the redemption by the owner. Our holding in the case of *Moon* v. *Georgia State Savings Association*, 200 Ark. 1012, 142 S. W. 2d 234, is not in conflict with the views here expressed. Here, there is an entire absence of any allegation or proof seeking to charge appellee with preventing bidders at the tax sale in 1935 or hindering redemption prior to the appellee's purchase in 1939; so

we find nothing that disqualifies the appellee from buying the lot from the State as he did in this case.

The question here raised is discussed in an annotation in 5 A. L. R. 959. Among other cases cited in the annotation is that of *Browne* v. *Carlisle,* 62 Miss. 595, which, while not in point, is nevertheless indicative of the general rule. There the Supreme Court of Mississippi recognized the distinction between a purchaser from the State after expiration of the period of redemption, as compared with the purchase by the officer at the sale conducted by him; and said: "After the expiration of the period allowed for redemption, the title to the land vested absolutely in the State, and it was held for sale by the State at a fixed price to any and all persons . . . The case is essentially different from that of an officer or trustee purchasing at his own sale where his official duty to sell for the highest price and his private interest to buy at the lowest price are, or may be, brought into conflict." See, also, Cooley on Taxation, 4th Ed., § 1447. In the absence of any facts such as existed in *Wait* v. *Gardiner,* 123 Mich. 236, 81 N. W. 1098, we prefer to follow the ruling of the Mississippi court in the case cited; and therefore hold that the appellee in this case was not disqualified from acquiring a deed from the State in 1939; and that the Chancery Court was correct in dismissing the appellant's complaint against the Heber Springs property.

## The Shiloh Property

I. *Description and Location.* This property was described as "The northwest quarter of block 14 of Shiloh, Arkansas, more particularly described as follows: Beginning at a point 165 ft. east of NE corner of block 14, Town of Shiloh, run west 165 ft. to the NE corner of block 14 thence south 368 ft., thence E. 60 ft. thence south 90 feet, thence E. 105 ft., thence north 458 feet to beginning." Oral testimony was introduced to the effect that lot 13 was east of and adjoining lot 14, and that the metes and bounds description above given placed the described parcel in lot 13 instead of lot 14. This oral testimony was of course incompetent if objection had been

offered, since the record was the best evidence. But neither party objected, and, while no formal stipulation was filed to that effect, the attorneys, by remarks in the record, practically stipulated that lot 13 was east of lot 14, and that this described metes and bounds parcel was in lot 13. We so treat the record in this case.

II. *Appellant's Foreclosure Title.* The original complaint of appellant in this case alleged that by a foreclosure proceeding brought by him against R. E. Chance and wife, the sale and purchase and commissioner's deed thereunder, appellant acquired title to this property in 1928. Against this claim of title, appellee testified that he and his family were in possession of all of the Shiloh lot, and he and his family had been in possession through various tenants since 1930. The names of the tenants and years of tenancy were definitely shown, and the adverse possession of this Shiloh property for more than seven years was sufficient to defeat appellant under § 8918 of Pope's Digest.

III. *Appellant's Tax Title.* Appellant claimed that in 1937 he acquired title to this property from the State of Arkansas for tax forfeiture of 1930, and he urged the State deed to defeat appellee's adverse possession. But the State deed to appellant described the property as "NW¼, block 14, Shiloh." As previously shown, the metes and bounds description placed the property in block 13, and so this State deed did not touch or affect the metes and bounds description, and was, therefore, *res inter alios acta,* so far as the property here involved was concerned; and the Chancery Court was correct in dismissing the plaintiff's complaint against the Shiloh property.

## Conclusion

To sum up the entire matter, the decree of the Chancery Court is correct, and is in all things affirmed.