CHEEK *v.* ROYSTON.

4-8642                                                      216 S. W. 2d 866

Opinion delivered January 10, 1949.

*Gordon Armitage,* for appellant.

*Yingling & Yingling,* for appellee.

GRIFFIN SMITH, Chief Justice. Relying on continuous payment of taxes under color of title and adverse possession for more than seven years, Royston alleged in his suit to quiet title that Mary Etta Cheek claimed an unknown interest in an unoccupied lot.

The intervention and cross-complaint of Edna Edwards as guardian admitted there was no actual adverse occupant, but charged forcible ejectment. The lot had formerly belonged to Will Cheek, Mary Etta's father, who died in possession, presumptively intestate. After Will's death Mary Etta obtained a warranty deed to a sister's interest and was an occupant until dispossessed by Royston in 1945. It was also charged that Royston caused removal of a house valued at $1,000.

In accounting for failure to pay taxes the guardian set out that Mary Etta became mentally incompetent in 1928 or 1929, and was later admitted to State Hospital.

Title transactions affecting the lot show forfeiture for 1930 general taxes and certification to the State, with confirmation in 1935. Searcy Street Improvement District 13 had foreclosed on two occasions. Royston purchased these titles.

From a decree dismissing the intervention and cross-complaint for want of equity, and confirming Royston's title, the guardian has appealed.

In the absence of express decretal findings it is not clear whether want of equity rests upon a determination that appellant's ward was insane, or whether the interest contended for was not established by appropriate evidence, hence we do not consider applicability of Act 329 of 1939 and construction given its retroactive provision. *Watson* v. *Anderson*, 201 Ark. 809, 147 S. W. 2d 28; nor do we decide whether the intervention was direct in its nature or a collateral attack. By Sec. 7316 of Pope's Digest, insane persons have three years after recovery to appear and "except" to proceedings. We express no opinion regarding the right of appellant's ward to question legality of the District foreclosures .

Appellant argues a single point: Mary was insane when her property rights became impaired, and has continued so. Appellee injects a second issue: that irrespective of insanity, paramount title in Mary Etta was not shown, hence an incorrect determination of competency would be of no advantage to the intervener.

Although appellant's ward had on two occasions been admitted to State Hospital, an adjudication of insanity was not shown. But in the circumstances here, with affirmative evidence by numerous witnesses and hospitalization any presumption arising because there were no Court orders was of a negative nature and would not control the Chancellor's action. *Schuman* v. *Westbrook*, 207 Ark. 495, 181 S. W. 2d 470. An examination of this case, and comparison with testimony presented by the

guardian for Mary Etta, show that the quantum of evidence here supporting the guardian's assertion of incompetency was at least equal to that offered in behalf of Anna Laurie Westbrook.

The factual balance is further tipped when consideration is given the deposition of Dr. G. W. Jackson, State Hospital Superintendent, claimed by appellee to have been inadmissible. Dr. Jackson did not have personal knowledge of Mary Etta, and his answers to interrogatories and cross-interrogatories were from Hospital records. The full record was not offered in evidence.

Counsel for appellee think the Superintendent testified as an expert without having qualified as such. Conceding that in certain aspects replies were conclusions drawn from medical knowledge of mental diseases, there remains the undisputed fact that the record, as distinguished from conclusions, accounts for essential information. The patient was suffering from dementia praecox, paranoid type. To the extent that Dr. Jackson testified to these factual indorsements, the evidence was competent. Act 238 of 1921, Pope's Digest, Sec. 5143, 3 Ark. Stats. (1947), § 28-907. Certified copies of the entire record ''or any excerpts'' may be used. Appellant was entitled to show the Hospital determination of insanity, and this, when taken into account supplementing other testimony, preponderates in favor of the guardian's plea of incompetency.[1]

We must therefore reverse the decree and remand the cause for proceedings under which the incompetent

[1] Appellee Royston's cross-interrogatory to the deposition of Dr. Jackson shows this question: "If you state the record of said Hospital shows that Mary Etta Cheek was examined during the years 1933, 1934, and 1938, state whether or not you made such examination or examinations and the record or records thereof, and if you did not, then state who made them: whether in your presence or under your supervision." Answering that the examinations were not made by him or under his supervision, Dr. Jackson in effect said that the information he gave *was* from the record. Answering negatively in one instance, Dr. Jackson said, "The record does not show." (Members of State Hospital Board, whose duty it is to require maintenance of the records, must take the constitutional oath of office. Act 240 of 1933. See Amendment No. 33 to the Constitution for matters relating to terms of Board members, tenure of office, etc.)

intervener may undertake to establish any rights she may have, within the issues.

Mr. Justice GEORGE ROSE SMITH dissents.

GEORGE ROSE SMITH, J., dissenting. The majority opinion relies on *Schuman* v. *Westbrook*, but there the evidence of insanity was uncontradicted. Here the lay testimony is so evenly balanced that the medical evidence given by Dr. Jackson becomes the pivotal factor. If his testimony were admissible I should agree to reversal, but I think the chancellor properly refused to consider it.

The only effect of Ark. Stats. (1947), § 28-907 is to permit the introduction of certified copies of public records or excerpts "with like effect as the originals thereof." Here no certified copy of the record was offered. Dr. Jackson testified on the basis of the hospital records, but he does not even purport to quote their exact language. His evidence is in his own words and amounts to no more than *his* interpretation of the substance of these records. We have consistently held such testimony inadmissible, requiring that the record itself or a certified copy be offered. *Halliburton* v. *Fletcher*, 22 Ark. 453; *State* v. *Songer*, 76 Ark. 169, 88 S. W. 903; *Bridwell* v. *Davis*, 206 Ark. 445, 175 S. W. 2d 992. I can see no practical reason for extending the scope of the established rule, and I deeply regret any pronouncement which tends to unsettle the Arkansas law by disregarding existing precedents.