Elizabeth Diann FRANCIS *v.*
PROTECTIVE LIFE INSURANCE COMPANY, a corporation;
and Chrysler Financial Corporation

07-206 265 S.W.3d 117

Supreme Court of Arkansas
Opinion delivered October 11, 2007

[Rehearing denied November 8, 2007.]

286

*Sam Sexton III*, for appellant.

*Mitchell, Williams, Selig, Gates & Woodyard, PLLC*, by: *John K. Baker* and *P. Benjamin Cox*, for appellee Protective Life Insurance Company.

*Watts, Donovan & Tilley, P.A.*, by: *Richard N. Watts, Debbie S. Denton*, and *Staci Dumas Carson*, for appellee Chrysler Financial Corporation.

ANNABELLE CLINTON IMBER, Justice. This case comes to us on petitions for review filed by Appellees Protective Life Insurance Company ("Protective Life") and Chrysler Financial Corporation ("Chrysler"). The Circuit Court of Johnson County granted summary judgments in favor of Protective Life and Chrysler and against Elizabeth Diann Francis ("Elizabeth"). On appeal, the Arkansas Court of Appeals reversed the circuit court's summary-judgment orders. *Francis v. Protective Life Ins. Co.*, 98 Ark. App. 1, 249 S.W.3d 828 (2007). We granted the petitions for review filed pursuant to Rule 2-4 of our Rules of the Supreme Court. We dismiss this appeal for lack of jurisdiction.[1]

On April 14, 2002, Elizabeth and her husband, Terrill K. Francis, purchased a vehicle from Breeden Dodge in Fort Smith. Financing was provided at the time of the transaction, pursuant to a retail installment contract, now held by Chrysler. Elizabeth and her husband also purchased credit life insurance from Protective Life at the time of the transaction. Protective Life was to pay the remaining debt on the vehicle loan in the event that Terrill passed away before the loan was paid in full. The sales transaction, financing, and insurance were all handled by an employee in the finance and insurance department at Breeden Dodge.

Terrill died on January 6, 2003. Shortly thereafter, Elizabeth filed a claim with Protective Life: Protective Life responded by letter, informing Elizabeth that the insurance policy should not have been issued and that coverage would be denied. In support of its decision to deny coverage, Protective Life quoted the applica-

---

[1] As a threshold issue, we note Protective Life's contention in its brief that the appeal should be sent back for rebriefing because of Elizabeth's failure to abstract. No abstract was provided in this case because no hearings were held and no testimony was taken. Protective Life claims that Elizabeth was not excused from abstracting the affidavits and responses to requests for admissions, as these documents are analogous to testimony. However, Protective Life cites us to a case decided pursuant to an old version of our rule on abstracting. Our current rule provides that "[p]leadings and documentary evidence shall not be abstracted." Ark. Sup. Ct. R. 4-2(a)(5) (2007). The discovery documents at issue here were submitted as exhibits attached to pleadings. Such evidence is appropriately included in the addendum, pursuant to Ark. Sup. Ct. R. 4-2(a)(8) (2007).

tion signed by Terrill on April 14: "I am not insurable for *any* coverage if I now have, or during the past 2 years have been seen, diagnosed or treated (including medication) for: (a) A condition, disease or disorder of the brain, heart, lung(s), liver, kidney(s), nervous system or circulatory system . . . ." (emphasis in original). The letter stated that Protective Life had obtained medical records indicating Terrill was seen at least eleven times, as late as February 13, 2002, for Severe Chronic Obstructive Pulmonary Disease (COPD). The treatment included hospitalization, prescription medications, and use of oxygen. On April 8, 2003, Protective Life refunded the $1026.40 premium paid on the policy, with a check made out to Chrysler as creditor.

Elizabeth filed a complaint in the Johnson County Circuit Court on June 6, 2003. She alleged breach of contract against Protective Life, claiming it was obligated to pay the amount due on the vehicle loan pursuant to the insurance policy. She contended that the Breeden Dodge employee who handled the transaction knew of her husband's lung condition, because Terrill used oxygen and an inhaler during the transaction and also stated that he would need room in the vehicle for his oxygen tanks. Terrill also told the employee that he was a disabled veteran, to which the employee allegedly responded, "It's no problem, they'll cover you." Elizabeth claimed that this knowledge was imputed to Protective Life by virtue of its agency relationship with the Breeden Dodge employee. She also alleged that, pursuant to the retail installment contract, Chrysler was subject to all claims and defenses she could assert against Breeden Dodge.[2] Elizabeth claimed that the negligence and misrepresentations of the Breeden Dodge employee, relating to the insurance coverage, could be asserted against Chrysler. She requested a declaratory judgment against Chrysler that no further debt was due under the retail installment contract.

Chrysler filed a motion to dismiss, pointing out that it was not a party to the insurance policy, and that any misconduct on the part of Breeden Dodge with respect to the issuance of the policy would be imputed to Protective Life, not Chrysler. The circuit court granted Chrysler's motion on April 6, 2005.

---

[2] The contract stated, "Notice: Any holder of this consumer credit contract is subject to all claims and defenses which the debtor could assert against the seller of goods or services obtained pursuant hereto or with the proceeds hereof."

Protective Life filed an answer to Elizabeth's complaint, as well as a counterclaim for rescission of the insurance policy, arguing that, by signing the application for insurance, Terrill made material misrepresentations about his health. Protective Life then filed a motion for summary judgment on its counterclaim. On June 1, 2005, the circuit court granted Protective Life's summary-judgment motion. The insurance policy was thereby rescinded, and Elizabeth's complaint against Protective Life was dismissed.

At that point, the only remaining claim in the case was a counterclaim filed by Chrysler, alleging that Elizabeth breached the retail installment contract by failing to pay the remaining debt on the vehicle loan. Chrysler filed a motion for summary judgment on its counterclaim, which was granted on November 1, 2005. However, the order granting Chrysler's summary-judgment motion incorrectly referred to Chrysler as a defendant and dismissed Elizabeth's complaint against Chrysler, which the court had previously done in the April 6 order granting Chrysler's motion to dismiss. Therefore, an amended and substituted order was filed by facsimile on November 3. This order correctly referred to Chrysler as the counterclaimant and granted summary judgment against Elizabeth. A judgment was also filed by facsimile on November 3, awarding Chrysler the sum of $22,786.60, with interest at a rate of six percent per annum, or, alternatively, ordering Chrysler to take possession of the vehicle in the event Elizabeth failed to pay the sum awarded to Chrysler. Hard copies of the judgment and amended order were filed on November 10, each with a notation in the bottom right-hand corner that read, "Replaces fax filed 11-3-05." The only difference between the faxed copies and the hard copies was in the assessed rate of post-judgment interest. On the hard copy of the judgment, the interest rate was written in as ten percent; whereas, on the faxed copy of the judgment, the interest rate was written in as six percent.

Elizabeth filed a notice of appeal on December 9, 2005. She stated that she was appealing from the November 10 order and the prior orders entered on April 6, June 1, and November 1, 2005. As the December 9 notice of appeal was filed fewer than thirty days following the November 10 order but more than thirty days following the November 3 order, this case presents a jurisdictional question. Both Protective Life and Chrysler filed motions in the Arkansas Court of Appeals to dismiss the appeal on the jurisdictional issue. The court of appeals attempted to certify the matter to this court, but we declined to accept the certification.

The Arkansas Court of Appeals decided, in a 4-2 opinion, that it had jurisdiction over the case. *Francis v. Protective Life Ins. Co., supra.* Also, in addressing the merits of the appeal, it reversed the circuit court's grant of summary judgment to both Protective Life and Chrysler, holding there was a genuine issue of material fact as to whether the statements of the Breeden Dodge employee assuring Terrill of insurance coverage were misrepresentations that would estop Protective Life from denying coverage and that could be asserted against Chrysler. *Id.* Both Protective Life and Chrysler assert in their petitions for review that the appeal should have been dismissed for lack of jurisdiction. We agree.

Pursuant to Ark. R. App. P. – Civil 4(a) (2007), a notice of appeal must be filed within thirty days of the entry of the judgment, decree, or order from which the appeal is taken. In this case, the jurisdictional issue turns on a determination of which date the final order and judgment were "entered" — either November 3, when faxed, or November 10, when the hard copies were submitted. Subsection (d) of Appellate Rule 4 specifies that a judgment or order is considered entered when it is filed in accordance with Administrative Order Number 2(b). Ark. R. App. P. – Civil 4(d) (2007). Likewise, Rule 58 of our Rules of Civil Procedure provides that "[a] judgment or decree is effective only when so set forth and entered as provided in Administrative Order No. 2." Ark. R. Civ. P. 58 (2007). Subsections (b)(2) and (b)(3) of Administrative Order Number 2 provide, in pertinent part:

> (2) The clerk shall denote the date and time that a judgment, decree or order is filed by stamping or otherwise marking it with the date and time and the word "filed." A judgment, decree or order is entered when so stamped or marked by the clerk, irrespective of when it is recorded in the judgment record book.
>
> (3) If the clerk's office has a facsimile machine, the clerk shall accept facsimile transmission of a judgment, decree or order filed in such manner at the direction of the court. The clerk shall stamp or otherwise mark a facsimile copy as filed on the date and time that it is received on the clerk's facsimile machine during the regular hours of the clerk's office or, if received outside those hours, at the time the office opens on the next business day. *The date stamped on the facsimile copy shall control all appeal-related deadlines pursuant to Rule 4 of the Arkansas Rules of Appellate Procedure – Civil.* The original judgment, decree or order shall be substituted for the facsimile copy within fourteen days of transmission.

Administrative Order Number 2 (b)(2) and (b)(3) (emphasis added).

The language of the Administrative Order is clear. When an order or judgment is faxed to the clerk's office, it is file-stamped, and the date marked on the faxed copy controls all deadlines relevant to an appeal. The court of appeals, however, found that the original copies of the order and judgment were never substituted for the faxed copies as required by subsection (b)(3). The majority concluded that, because of a lack of compliance with Administrative Order Number 2, the November 10 order and judgment constituted the only valid order and judgment from which to appeal.

In addressing the jurisdictional question, the court of appeals declined to heed the guidance of a Reporter's Note to Administrative Order Number 2. The Reporter's Note reads as follows: "To ensure the permanency of official court records, the original judgment, decree or order must be substituted for the facsimile copy within 14 days of transmission, but this step does not have any bearing on the effectiveness of the faxed document or the time for taking an appeal." The majority was correct in noting that Reporter's Notes are not binding precedent, but this court has held they may offer guidance as to a rule's meaning or intent. *See Velek v. State (City of Little Rock)*, 364 Ark. 531, 222 S.W.3d 182 (2006). We believe the court of appeals erred in refusing to acknowledge the intent of Administrative Order Number 2 as reflected in the Reporter's Note.

Moreover, we are not convinced that the court of appeals properly characterized the filings of the order and judgment as noncompliant. Original copies arguably were submitted on November 10, pursuant to subsection (b)(3) of Administrative Order Number 2. The hard copies are identical to the faxed copies, with the exception of the interest rate, which was filled in by hand on the typed judgments. In addition, the hard-copy order and judgment both display the notation "Replaces fax filed 11-3-05," indicating they were meant to serve as substitutes pursuant to Administrative Order Number 2, subsection (b)(3).

In light of the Administrative Order and the Reporter's Note, we hold that the November 3 order and judgment constitute the final, appealable order. For us to hold otherwise would require a finding that the November 10 order amended the November 3 order, replacing it as the final, appealable order. This we cannot do. The November 10 judgment is clearly *nunc pro tunc*, and the November 3 and 10 orders are identical.

■ Arkansas Rule of Civil Procedure 60 and case law extending back over 150 years give circuit courts the authority to correct a clerical mistake in an order at any time with a *nunc pro tunc* order, used to "make the record speak now what was actually done then." *See* Ark. R. Civ. P. 60 (2007); *Lord v. Mazzanti*, 339 Ark. 25, 2 S.W.3d 76 (1999); *Bridwell v. Davis*, 206 Ark. 445, 447, 175 S.W.2d 992, 994 (1943). A circuit court is permitted to enter a *nunc pro tunc* order when the record is being made to reflect that which occurred but was not recorded due to a misprision of the clerk. *Rossi v. Rossi*, 319 Ark. 373, 892 S.W.2d 246 (1995). This court has defined a true clerical error, one that may be corrected by *nunc pro tunc* order, as "essentially one that arises not from an exercise of the court's judicial discretion but from a mistake on the part of its officers (or perhaps someone else)." *Luckes v. Luckes*, 262 Ark. 770, 772, 561 S.W.2d 300, 302 (1978).

■ In the instant case, the hand-written entry of an interest rate of six percent on the November 3 judgment, which was changed to ten percent on the November 10 judgment, can be said to be a true clerical error. The interest rate was fixed by statute. *See* Ark. Code Ann. § 16-65-114 (Repl. 2005). This court has previously held that, where the amount on which post-judgment interest was computed was not in line with a judgment notwithstanding the verdict, the correction of that amount was accomplished by *nunc pro tunc* order. *See Southern Farm Bureau Cas. Ins. Co. v. Robinson*, 238 Ark. 159, 379 S.W.2d 8 (1964). In that case, the error was obviously clerical because the court had already determined the correct amount, in its grant of the motion for judgment notwithstanding the verdict, and the amount stated in the order did not conform to the prior order. *Id.* Similarly, in the case at bar, the post-judgment interest rate was already determined by statute. The insertion of a six percent interest rate on the November 3 judgment was obviously a clerical error, that is, one arising not from an exercise of the court's judicial discretion but from a mistake. Thus, the correction of the post-judgment interest rate, so as to reflect the ten percent interest rate fixed by statute, was accomplished by the November 10 *nunc pro tunc* judgment.

■ An appeal from a *nunc pro tunc* order may challenge only those corrections made in the *nunc pro tunc* order; it may not challenge issues in the original order that could have been appealed earlier. *See Kindiger v. Huffman*, 307 Ark. 465, 821 S.W.2d 33

(1991). We have dismissed appeals as untimely when appellants, after the time for appealing from the original order had expired, attempted to appeal issues not addressed in or corrected by the *nunc pro tunc* order. *See id.*; *Holt Bonding Co., Inc. v. State*, 353 Ark. 136, 114 S.W.3d 179 (2003). In the instant case, the interest rate was the only change made in the November 10 *nunc pro tunc* judgment and order, but Elizabeth's appeal does not concern the interest rate correction. Under our prior precedent, we must dismiss as untimely the appeal of all other issues.

 Elizabeth nonetheless makes one final argument on the jurisdictional question. She asserts that she was not properly notified of the judgment and order filed by facsimile on November 3. Based on this allegation, she contends the November 10 filings were the only orders from which she could appeal because, to her knowledge, those were the only orders that existed. As to this argument, we conclude that Elizabeth has failed to show prejudice. Rule 60(b) of our Rules of Civil Procedure provides that a circuit court "may at any time, with prior notice to all parties, correct clerical mistakes in judgments, decrees, orders, or other parts of the record and errors therein arising from oversight or omission." Ark. R. Civ. P. 60(b) (2007). Though Elizabeth failed to cite us to this rule, it clearly requires that notice be given to the parties before a court corrects a clerical error. Despite the notice requirement, a *nunc pro tunc* order will not be set aside as having been entered without notice to a party where no prejudice is shown. *See Holt Bonding Co., Inc. v. State, supra*; *Luckes v. Luckes, supra.* Moreover, we have held that, when a *nunc pro tunc* order reflects an accurate correction of the clerical error, there can be no prejudice. *Luckes v. Luckes, supra.* When the *nunc pro tunc* order is correct, "[n]othing would be gained by setting aside the order and immediately re-entering it." *Id.* at 772, 561 S.W.2d at 302. In the instant case, Elizabeth cannot show she was prejudiced by the November 10 *nunc pro tunc* judgment, because it accurately reflects the correct interest rate.

 In an attempt to show prejudice, Elizabeth's counsel points out that he had no way of knowing that an order and judgment were entered on November 3, because he did not receive copies of the November 3 filings and because his copies of the November 10 order and judgment did not contain the notation "Replaces fax filed 11-3-05." According to her counsel, Eliza-

beth's notice of appeal was filed late through no fault of his own, but because the circuit court failed to keep him informed about the filings in the case. We disagree. We have held that a lawyer and litigant must exercise reasonable diligence in keeping up with the happenings of a case. *See Arkco Corp. v. Askew*, 360 Ark. 222, 200 S.W.3d 444 (2004); *Arnold v. Camden News Publishing Co.*, 353 Ark. 522, 110 S.W.3d 268 (2003). By the exercise of reasonable diligence so as to keep up with the filings in the case, Elizabeth and her counsel would have known about the order and judgment entered on November 3 and the notation on the November 10 order and judgment. Thus, we must reject Elizabeth's claim that the notice of appeal was filed late through no fault of her own.

Appeal dismissed.