Michael BIBBS; L.D. Mason; MJ Construction Company, Inc.;
Joyce Bradley Babin, as Trustee for Lloyd Dwight Mason and
Brenda Lee Mason; and James F. Dowden, as Trustee for
Michael J. Bibbs and Audrey C. Bibbs  v.
COMMUNITY BANK of BENTON

08-378                                              289 S.W.3d 393

Supreme Court of Arkansas
Opinion delivered December 4, 2008

*Eichenbaum, Liles & Heister, P.A.*, by: *James H. Penick, III*, for appellants.

*Watts, Donovan & Tilley, P.A.*, by: *David M. Donovan*; and *Stuart Law Firm, P.A.*, by: *J. Michael Stuart* and *Ginger Stuart Schafer*, for appellee.

Robert L. Brown, Justice. Appellants, Michael Bibbs, L.D. Mason, and MJ Construction Company, Inc., appeal from the circuit judge's judgment granting summary judgment and dismissal in favor of appellee Community Bank. The appellants assert three points on appeal. We affirm the judgment.

This dispute arises from a loan agreement between Community Bank and Bibbs, Mason, and MJ Construction. Bibbs and Mason are shareholders of MJ Construction — a dirt moving and development business. In 2000, Bibbs, Mason, and MJ Construction purchased 120 acres in Lonoke County with the intent to develop a subdivision. The purchase was financed with a three-year, $375,000 loan from Community Bank, with Community Bank taking a mortgage on the property as security. The loan agreement provided that a final balloon payment for the unpaid balance of the loan was due on April 25, 2003. According to Bibbs, he did not expect to pay off the loan on its due date because he believed that Community Bank would allow him to "roll over" the unpaid balance into a new loan. Bibbs, Mason, and MJ Construction failed to pay off the loan on its due date, and Community Bank made demand for the final balloon payment. When the final payment went unpaid, Community Bank sued for

foreclosure on August 1, 2003. On August 25, 2003, Bibbs filed for Chapter 7 bankruptcy. On February 8, 2005, Mason also filed for Chapter 7 bankruptcy, and in doing so, he scheduled a potential lender-liability lawsuit against Community Bank as an asset of the estate. About four months later, Mason terminated his Chapter 7 bankruptcy and filed a Chapter 13 bankruptcy petition.

On August 8, 2005, Bibbs, Mason, and MJ Construction filed suit against Community Bank and alleged breach of the covenant of good faith, breach of fiduciary duty, fraudulent concealment, constructive fraud, conversion, unjust enrichment, and intentional infliction of emotional distress ("lender-liability lawsuit"). On August 30, 2005, Community Bank filed an answer in which it asserted that Bibbs, Mason, and MJ Construction lacked standing to bring this suit.

On February 13, 2007, Community Bank moved for summary judgment, arguing that the appellants lacked standing because Bibbs's and Mason's Chapter 7 bankruptcy trustees had the exclusive right to prosecute the action, and they were not parties plaintiff. On March 22, 2007, the appellants filed an amended complaint in which Bibbs's and Mason's bankruptcy trustees were added as plaintiffs. On that same date, Bibbs and Mason filed a response to Community Bank's motion for summary judgment in which they argued that they were the proper parties before the court but that "the claims have been, and continue to be pursued on behalf of the estate." Attached to their response to Community Bank's motion for summary judgment was a February 20, 2007 affidavit from James Dowden, Bibbs's bankruptcy trustee. Mr. Dowden's affidavit said that during his tenure as trustee he became "aware of [appellants'] assertion that they had a cause of action against Community Bank"; that appellants hired an attorney, James Penick, to pursue the claim on a contingent fee basis; that Mr. Dowden obtained the bankruptcy court's approval of the lawsuit (in September 2005, after the lawsuit had been filed) and recorded the suit as a potential asset of the estate on December 31, 2005; that appellants' claims were "being pursued on behalf of the Chapter 7 bankruptcy estate by Mr. Penick as special counsel to the Trustee," as was "the proper way of handling such litigation"; and that any funds obtained from a settlement or a verdict in favor of the appellants would be payable to the bankruptcy estate. Additionally, appellants argued that MJ Construction had standing to bring the lawsuit, even if Bibbs and Mason did not.

On April 12, 2007, Community Bank moved to dismiss the appellants' amended complaint because it was filed after the three-year statute of limitations had expired.[1] Community Bank asserted, in addition, that MJ Construction lacked standing because it was not a corporation in good standing at the time either the original complaint or the amended complaint was filed. This assertion was supported by a certificate from the Arkansas Secretary of State, showing that MJ Construction's corporate charter had been revoked on December 31, 2003, and was not reinstated until April 9, 2007.

On May 7, 2007, the circuit judge sent a letter to both parties stating that a hearing on Community Bank's summary-judgment motion regarding standing and motion to dismiss regarding the statute of limitations would not be scheduled until the parties had completed mediation. The next day, on May 8, 2007, the judge sent a second letter to the attorneys setting a hearing on the motions for May 21, 2007. On that same date, counsel for Community Bank sent a letter to appellants' counsel erroneously stating that the hearing had been scheduled for July 10, 2007.

On May 21, 2007, the circuit judge held a hearing on Community Bank's motions. Counsel for the appellants was not present. The circuit judge noted for the record that he had sent a letter fixing the date and time of the hearing to all parties.[2] Because of appellants' counsel's absence, the circuit judge stated that he would not hear oral argument from Community Bank's attorney and would instead decide the issues based on the pleadings and briefs of the parties. The circuit judge then ruled from the bench that he was granting Community Bank's motion for summary judgment because of appellants' lack of standing and was dismissing the suit as outside the limitations period.

On May 31, 2007, appellants moved for reconsideration, arguing that the circuit judge had erred by conducting the hearing without appellants' counsel being present and also arguing why appellants did not lack standing. On June 4, 2007, the circuit judge entered a written order memorializing his ruling from the bench and granting Community Bank's motion for summary judgment and motion to dismiss. In that order, the circuit judge found that

---

[1] Appellants do not challenge the circuit judge's finding that the statute of limitations had run at the time the amended complaint was filed.

[2] Appellants do not deny receiving this letter.

neither Bibbs nor Mason had standing to file the original complaint on August 8, 2005, because both had filed for Chapter 7 bankruptcy prior to that date, and, thus, their bankruptcy trustees had the exclusive right to prosecute the cause of action against Community Bank and had not abandoned that right. The judge further concluded that the three-year statute of limitations had run by the time of the filing of the amended complaint and that the amended complaint did not relate back to the date of the filing of the original complaint because the original complaint was void *ab initio*. As a final point, he concluded that MJ Construction lacked standing at the time the original complaint was filed due to the revocation of its corporate charter. The circuit judge dismissed the original complaint and amended complaint with prejudice.

Appellants Bibbs and Mason appealed to the court of appeals, and the court of appeals affirmed. *Bibbs v. Community Bank*, 101 Ark. App. 462, 278 S.W.3d 564 (2008).[3] The appellants petitioned this court for review, which this court granted. When we grant review, we treat the appeal as if it were originally filed in this court. *Cedar Chem. Co. v. Knight*, 372 Ark. 233, 273 S.W.3d 473 (2008).

## I. Appellants' Standing

For their first point on appeal, Bibbs and Mason claim that the circuit judge erred in finding that they lacked standing to file the original lender-liability complaint on August 8, 2005. They assert that their cause of action accrued after Bibbs filed bankruptcy on August 25, 2003 and that, because of this, his cause of action was not the "property of the estate," as defined in the Bankruptcy Code. Next, they contend that Mason had standing because he filed Chapter 13 bankruptcy four months after he filed for Chapter 7 in 2005, and under the Bankruptcy Code, a trustee is not granted the exclusive right to prosecute the debtor's cause of action in a Chapter 13 bankruptcy. As an additional point, Mason seeks to distinguish *Fields v. Byrd*, 96 Ark. App. 174, 239 S.W.3d 543 (2006), a case the circuit judge relied on in his ruling, because Mason scheduled his lender-liability suit against Community Bank as part of his Chapter 7 bankruptcy and did not conceal it as the

---

[3] MJ Construction did not challenge on appeal the circuit judge's standing ruling regarding its revoked charter.

debtor had done in *Fields*. Finally, Bibbs maintains he had standing because Mr. Dowden, his bankruptcy trustee, ratified the filing of the original complaint.

The question of standing is a matter of law for this court to decide, and this court reviews questions of law de novo. *Pulaski County v. Ark. Democrat-Gazette, Inc.*, 371 Ark. 217, 264 S.W.3d 465 (2007).

A debtor's commencement of a Chapter 7 bankruptcy creates an estate consisting of all of the debtor's legal and equitable interests in property. 11 U.S.C. § 541(a)(1) (2008). Once a bankruptcy trustee is appointed to administer the debtor's estate, the trustee has the exclusive right to prosecute causes of action that are the property of that estate. 11 U.S.C. §§ 323, 704(1). Causes of action that accrue prior to the filing of a petition for relief under the Bankruptcy Code are property of the estate. *See Bratton v. Mitchell, Williams, Selig, Jackson & Tucker*, 302 Ark. 308, 788 S.W.2d 955 (1990) (citing *Vreugdenhil v. Hoekstra*, 773 F.2d 213 (8th Cir. 1985)). A debtor lacks standing to maintain, on his or her own behalf, a suit belonging to the estate unless that cause of action has been abandoned by the trustee. *Id.*

*a. Bibbs's standing.*

We first address the appellants' contention that Bibbs's claim accrued after he filed for Chapter 7 bankruptcy. If true, his cause of action would not be the property of the bankruptcy estate and, thus, Bibbs would have standing to file his complaint against Community Bank on August 8, 2005.

The crux of Bibbs's lender–liability complaint is that Community Bank's actions concerning the repayment of the $375,000 loan forced him to declare bankruptcy. This necessarily implicates pre-bankruptcy conduct on Community Bank's part. Bibbs, moreover, admits as much in both his complaint and his deposition testimony. As one example, during his deposition, Bibbs testified: "It is my belief that the bank forced me into bankruptcy. If the bank would not have done all the things I complain of in my lawsuit, I would not have had to file bankruptcy."

Bibbs's assertion that some of Community Bank's alleged misconduct occurred after he filed bankruptcy does not change this conclusion. It is well established that a cause of action accrues the moment the right to commence an action comes into being. *Quality Optical of Jonesboro, Inc. v. Trusty Optical, L.L.C.*, 365

Ark. 106, 225 S.W.3d 369 (2006). It is clear to this court that Bibbs's cause of action arose out of the alleged misconduct of Community Bank concerning its strict enforcement of the loan agreement's April 25, 2003 due date, which, by his own assertion, forced Bibbs into bankruptcy. In short, because his cause of action accrued before Bibbs's bankruptcy filing, the cause of action is the property of his bankruptcy estate. We hold that, as a result, Bibbs lacked standing to file the lender-liability lawsuit.

The appellants also contend that Bibbs had standing to sue because the filing of the suit against Community Bank was "ratified for administrative purposes" by his trustee, Mr. Dowden, as set forth in his affidavit, and through the filing of the amended complaint joining the trustees as plaintiffs on March 22, 2007. Appellants' authority for this point is the following language from *Bratton*: "In this case, there is no evidence that the bankruptcy trustee abandoned this claim or that the trustee joined in or *ratified* Bratton's filing of this complaint in circuit court. In fact, the evidence in the record indicates the contrary." 302 Ark. at 309, 788 S.W.2d at 956 (emphasis added). The appellants also cite Rule 17(a) of the Arkansas Rules of Civil Procedure, which reads in part that no action shall be dismissed until a reasonable time has been given for the real party in interest to ratify commencement of the action.

We first address ratification by the trustee under the Bankruptcy Code. As already noted, the Bankruptcy Code provides that the trustee has the exclusive right to prosecute lawsuits belonging to the estate in a Chapter 7 bankruptcy. *See* 11 U.S.C. §§ 323, 704(a)(1). The only exception exists in cases of abandonment by the trustee in a Chapter 7 bankruptcy after a potential claim has been scheduled as an asset. *See* 11 U.S.C. § 554; *Bratton, supra.* The appellants point to no provision in the Bankruptcy Code supporting ratification by the trustee in an amended complaint after an original complaint is filed by the debtor and the statute of limitations has passed. Hence, we hold that any subsequent ratification of Bibbs's lender-liability suit under these facts did not cure the standing deficiency under the Bankruptcy Code.

There is another reason why the ratification argument fails. This court has held that a complaint filed by a party without standing in a wrongful-death action is a nullity. *See Hubbard v. Nat'l Healthcare of Pocahontas, Inc.*, 371 Ark. 444, 267 S.W.3d 573 (2007) (wrongful death complaint filed by administratrix two weeks

before her appointment was a nullity because administratrix did not have standing to pursue the claim prior to appointment); *St. Paul Mercury Ins. Co. v. Circuit Court of Craighead County*, 348 Ark. 197, 73 S.W.3d 584 (2002)(a survival complaint filed by patient's family was a nullity where the family lacked standing to pursue the survival action after administrator had been appointed). At the time the lawsuit against Community Bank was filed on August 8, 2005, Bibbs lacked standing under the Bankruptcy Code and the complaint, under the reasoning of *Hubbard* and *St. Paul Mercury Insurance Company*, was therefore a nullity with no legal force or effect. It is illogical to conclude that a trustee can ratify something that, as far as the law is concerned, is void and never existed.

We are mindful of the fact that Rule 17(a) of the Arkansas Rules of Civil Procedure, which provides for suits being prosecuted in the name of the real party in interest, contemplates ratification. Rule 17(a) provides in pertinent part:

> No action shall be dismissed on the ground that it is not prosecuted in the name of the real party in interest *until a reasonable time has been allowed after objection for ratification of commencement of the action* by, or joinder or substitution of, the real party in interest; and such ratification, joinder or substitution shall have the same effect as if the action had been commenced in the name of the real party in interest.

Ark. R. Civ. P. 17(a) (emphasis added). Yet, even if the original complaint was not deemed to be a nullity for lack of the debtors' standing, we disagree that Mr. Dowden, as trustee, could ratify Bibbs's original complaint after the fact and thereby legitimize his debtors' standing under these facts.

Because the Arkansas Rule of Civil Procedure 17(a) mirrors Federal Rule 17(a), we turn to the Federal Advisory Committee's notes for guidance. According to the Advisory Committee Note to Fed. R. Civ. P. 17, Rule 17(a) "should not be misunderstood or distorted. It is intended to prevent forfeiture *when determination of the proper party to sue is difficult or when an understandable mistake has been made*." Fed. R. Civ. P. 17, Advisory Committee's Notes to the 1966 Amendments (emphasis added). Accordingly, most courts have applied this part of Rule 17(a) only when the plaintiff brought the action in his or her own name because determination of the real party in interest was difficult or when an understandable mistake was made. *See, e.g., Crowder v. Gordons Transps., Inc.*, 387

F.2d 413 (8th Cir. 1967) (plaintiff's mistake was "understandable and excusable" where case involved a conflicts-of-law question with respect to whether Arkansas or Missouri law applied, and each state's wrongful-death statute designated a different person as the real party in interest). *See also Advanced Magnetics, Inc. v. Bayfront Partners, Inc.*, 106 F.3d 11 (2d Cir. 1997) (holding district court erred in failing to permit substitution of plaintiffs to relate back under Rule 15(c) and 17(a) where Advanced Magnetics was mistaken about the legal effect of a shareholder assignment). This court has recognized the "understandable mistake" requirement of Rule 17(a) by inference. *See Rhuland v. Fahr*, 356 Ark. 382, 392, 155 S.W.3d 2, 9 (2004) (Rules 15 and 17 were inapplicable where "no such understandable mistake occurred").

██ In the instant case, when the original complaint was filed on August 8, 2005, the real parties in interest were Bibbs's and Mason's bankruptcy trustees. We have held in this opinion that the Bankruptcy Code clearly provides that a trustee, and only a trustee, has standing to prosecute causes of action that are property of the Chapter 7 bankruptcy estate. 11 U.S.C. §§ 323, 701(1). The determination of the real party in interest was not difficult for the appellants in this case; nor was there an understandable or excusable mistake by Bibbs and Mason in this regard. *See Rhuland, supra* (not understandable mistake when wrongful-death statute specifically detailed who may bring suit). Accordingly, ratification by Bibbs's trustee did not cure Bibbs's standing deficiency under Rule 17(a) or breathe new life into his defunct pleading. We conclude for this additional reason that Bibbs clearly lacked standing at the time the original complaint was filed.

*b. Mason's standing.*

In the appellants' reply brief, they claim that the lender-liability lawsuit was abandoned to Mason, because Mason scheduled the lawsuit as an asset in his Chapter 7 filing on February 8, 2005, and the bankruptcy estate was closed on May 24, 2005, without the lawsuit being administered. They emphasize that, unless otherwise ordered by the court, any scheduled property that is not administered at the time of the closing of the estate is considered abandoned to the debtor. They direct this court to 11 U.S.C. § 554(c), which reads:

> (c) Unless the court orders otherwise, any property scheduled under section 521(1) of this title not otherwise administered at the

time of the closing of a case is abandoned to the debtor and administered for purposes of section 350 of this title.

As the lender-liability lawsuit was abandoned to Mason, he contends he had standing to prosecute the litigation.

We refuse to address this argument for two reasons. Our initial reason is that Mason makes the argument for the first time in his reply brief on appeal. This is too late. *See Maddox v. City of Fort Smith*, 346 Ark. 209, 56 S.W.3d 375 (2001) ("We do not consider arguments raised for the first time in a reply brief because the appellee is not given a chance to rebut the argument."). Secondly, though the circuit judge made a finding in his judgment of no abandonment, appellants did not argue section 554(c) to the circuit judge in either their brief opposing summary judgment or in their motion for reconsideration. *See Perry v. Baptist Health*, 368 Ark. 114, 243 S.W.3d 310 (2006) ("[W]e will not consider an argument raised for the first time on appeal."). The appellants' argument to the circuit judge in their response brief solely regarded judicial estoppel and did not address abandonment under section 554(c) and its effect on Mason's standing.

In their petition for review, appellants contend that they did not have the opportunity to argue the abandonment/standing point under section 554(c) before the circuit judge due to the circuit judge's decision to proceed with the summary-judgment hearing without their counsel being present. What occurred at the hearing, however, does not change the fact that appellants raised the abandonment argument for the first time in their reply brief on appeal, thus precluding Community Bank from responding. *See Maddox, supra*. As already mentioned, appellants could have raised the abandonment argument in their brief to the circuit judge in support of their response to the summary-judgment and dismissal motions or in their motion for reconsideration, and they failed to do so.[4]

We are aware that Mason reopened his Chapter 7 bankruptcy estate on July 25, 2006, which might suggest that any previous abandonment by Mason's trustee was revoked by the new

---

[4] Appellants also argue on appeal that the circuit judge "may have" erroneously applied the doctrine of judicial estoppel. It is not apparent to this court that the circuit judge ever discussed the issue of judicial estoppel. Accordingly, we decline to address it.

filing. Courts are generally in agreement that unadministered assets that are abandoned to a debtor under section 554(c) are not automatically "reeled back into the estate" by reopening the case. *See, e.g., In re Menk*, 241 B.R. 896 (1999); 9E Am. Jur. 2d *Bankruptcy* § 3748, p. 23 (2006).

Nor do we agree that filing a Chapter 13 bankruptcy in 2005 four months after filing the original Chapter 7 bankruptcy gave Mason standing to prosecute a scheduled lender-liability suit on August 8, 2005. This, again, is in the nature of an abandonment argument under section 554(c), which was not made to the circuit judge or made to this court until the reply brief.

## II. Relation Back of Amended Complaint

For their second point on appeal, Bibbs and Mason contend that the circuit judge erred in finding that their amended complaint did not relate back to the filing of their original complaint under Rule 15(c) of the Arkansas Rules of Civil Procedure. Community Bank responds that because Bibbs and Mason lacked standing to sue, their original complaint was a nullity and therefore the amended complaint adding the trustees as plaintiffs cannot relate back to a void complaint. They cite *Rhuland v. Fahr, supra.*

This court has held that for the relation-back doctrine to apply there must be valid pleadings to amend. *See St. Paul Mercury Ins. Co. v. Circuit Court of Craighead County, supra.* Bibbs and Mason lacked standing when they filed their original complaint; thus, the original complaint was a nullity. *See Hubbard v. Nat'l Healthcare of Pocahontas*, 371 Ark. at 452, 267 S.W.3d at 578 ("[a]ppellant's complaint was a nullity because she did not have standing" at the time it was filed). Accordingly, when appellants filed their amended complaint in 2007, there was not a valid original complaint to amend and, thus, nothing to which the amended complaint could relate back.

Moreover, this court held in *St. Paul* that an amended complaint that substitutes out the original plaintiffs and replaces them with entirely new plaintiffs does not constitute an amendment to the original complaint but rather is the filing of a new lawsuit. 348 Ark. at 206, 73 S.W.3d at 589. Here, the appellants attempted to cure the deficiency of their original complaint by joining their bankruptcy trustees as parties plaintiff in their amended complaint. However, because the appellants were not

the real parties in interest at the time of either the filing of the original complaint or the filing of the amended complaint under Rule 17(a), as discussed above, the joinder of the bankruptcy trustees in the amended complaint had the effect of substituting entirely new plaintiffs. This was in the nature of filing a new action and is barred by the statute of limitations. We affirm the circuit judge on this point.

### III. Appellants' Motion for Reconsideration

For their final point on appeal, Bibbs and Mason urge that the circuit judge erred by denying their motion for reconsideration following the summary-judgment and dismissal hearing when appellants' counsel was not present. Appellants urge that the circuit judge's decision to continue with the summary-judgment and dismissal hearing in the absence of appellants' counsel and despite conflicting correspondence from the circuit judge and opposing counsel regarding the hearing date constitutes reversible error.

We first note that this court has held that a lawyer and litigant must exercise reasonable diligence in keeping up with the progress of a case. *Francis v. Protective Life Ins. Co.*, 371 Ark. 285, 265 S.W.3d 117 (2007); *Arnold v. Camden News Publ'g Co.*, 353 Ark. 522, 110 S.W.3d 268 (2003). In a letter dated May 8, 2007, the circuit judge notified all counsel that the summary-judgment and dismissal hearing was scheduled for May 21, 2007. To be sure, Community Bank's counsel erroneously notified appellants' counsel that the hearing was set for July 10, 2007, which confused matters. But if any confusion arose from the circuit judge's conflicting orders or by an inconsistent date in opposing counsel's confirmation letter, appellants' counsel should have inquired to determine the correct date and time of the hearing from the circuit judge. Furthermore, at the hearing on May 21, 2007, the circuit judge refused to hear oral argument from Community Bank's lawyer on the motions due to the absence of appellants' counsel and stated that he would rely solely on the pleadings and the parties' briefs in making his decision. The judge concluded the hearing by orally granting summary judgment and dismissal in favor of Community Bank.

Appellants next filed a motion for reconsideration on May 31, 2007, in which they contested the holding of the hearing and raised their standing arguments. It was only after this motion that the circuit judge entered his order granting summary judgment and dismissal.

Although, admittedly, conducting a hearing without the presence of counsel for a party is an irregular and questionable procedure, the circuit judge took pains to assure that Community Bank would not receive an unfair advantage due to the absence of appellants' counsel. In addition to that, appellants' counsel had the opportunity to raise any pertinent arguments in the motion for reconsideration filed before the entry of the order.

As a final matter, appellants have not shown this court how they were specifically prejudiced by their counsel's absence at the hearing.[5] Rule 56 of the Arkansas Rules of Civil Procedure does not give the parties an automatic *right* to a summary-judgment hearing. It is discretionary with the circuit judge. Moreover, as we have noted, the circuit judge took steps to assure no unfair prejudice to appellants occurred. Without unfair prejudice, we are hard pressed to reverse the circuit judge's judgment. *See Villanueva v. CNA Ins. Co.*, 868 F.2d 684 (5th Cir. 1989) (though the court viewed with suspicion a summary-judgment conference which terminated the litigation without plaintiff's counsel being present, the record reveals no unfair prejudice to the plaintiff). Taking all the factors together, we conclude there was no abuse of discretion by the circuit judge in going forward with the hearing.

Affirmed.

---

[5] Appellants take issue with the circuit judge's statement that he had not read all the documents "exhaustively." Again, appellants have not illuminated this court on how this specifically resulted in prejudice to them. They also refer to "evidence" submitted at the hearing. The only "evidence" was a marked exhibit of the judge's letter setting the hearing date and Community Bank's counsel's reference to the revoked charter of MJ Construction Company. Again, we fail to see how this prejudiced the appellants.