CHICAGO, ROCK ISLAND & PACIFIC RAILROAD CO. *v.*
DAVIS, ADM'R.

5-3696                                          397 S. W. 2d 360

Opinion delivered December 6, 1965.

[Rehearing denied January 24, 1966.]

*Wright, Lindsey, Jennings, Lester & Shults,* for appellant.

*Jeff Mobley* and *William R. Bullock,* for appellee.

GEORGE ROSE SMITH, J. On the night of November 12, 1963, Dewey Moore was killed in a grade crossing collision in the town of Belleville. Moore was survived by six adult children. This action for wrongful death was brought by the administrators of Moore's estate against the railroad company, the locomotive engineer,

D. L. Corley, and the fireman, G. M. Paul. The jury returned a $15,000 verdict against the corporation, but the verdict was in favor of the two individual defendants. The trial court overruled the corporation's motion for judgment notwithstanding the verdict and entered a judgment in conformity with the jury's findings.

Similar inconsistent verdicts were considered in *Porter-DeWitt Const. Co.* v. *Danley*, 221 Ark. 813, 256 S. W. 2d 540 (1953), where we reviewed our earlier cases. The rule is that if the employer's liability is attributable solely to the employee's negligence, a verdict in favor of the employee exonerates the employer as well. But if there is independent actionable negligence on the part of the employer then he may be held liable even though the employee is found to have been free from fault. Thus the question is whether the evidence establishes a cause of action against the railroad company without regard to any negligence of its engineer or fireman.

At the trial the plaintiffs' proof was directed primarily to their contention that the accident was caused by the train's excessive speed or by the train crew's failure to keep a lookout or to sound the whistle or bell, as required by law. This proof cannot support the judgment against the company, for it merely tends to indicate negligence on the part of the individual defendants. Counsel for the appellees, however, suggest three separate grounds upon which the railroad company might be held to have independently negligent.

First, it is argued that the crew's failure to sound the whistle or bell may have been due to the company's negligence in not maintaining a whistle post (a small post bearing the letter "W") at an appropriate point on the railroad right-of-way to indicate to the train crew that the crossing signals should be given. The flaw in this contention is that there was no such issue of fact at the trial. The complaint contained several specific allegations of negligence, but the failure to maintain a whistle post was not among them. There was nothing in the pleadings to warn the railroad company that the absence

of such a post would be a contested question of fact. There was no request that any such issue be submitted to the jury, although the actual allegations of negligence were explained in the court's instructions. All that the record contains on this point is a casual statement by an expert witness, a photographer, that he did not see a whistle post either in making an aerial photograph of the grade crossing or in driving down the highway next to the tracks. This testimony may have been admissible to corroborate the plaintiffs' proof that the statutory signals were not given, but it certainly did not create the issue of fact now being argued for the first time.

Secondly, it is contended that the company was negligent in having constructed its Belleville station so close to the crossing where Moore was killed that his view of the oncoming train was unnecessarily obstructed. Photographs in the record show that Highway 10 and the railroad right-of-way lie parallel as they pass through the community and together provide an almost unobstructed view in both directions from the cross street on which Moore was traveling. The only obstruction is the depot, a small frame building 18 feet wide. As Moore approached the crossing the depot was 87 feet down the tracks to his right (the direction from which the train was coming) and was set back 18 feet from the tracks. Moore had lived in Belleville for 28 years and was thoroughly familiar with the location of the depot, which was built some 50 years ago. The train, with its headlights burning, apparently struck the center of Moore's car as he attempted to drive across the tracks.

The presence of an obstruction near a grade crossing (especially an obstruction that has existed for half a century) is not, in itself alone, a basis for a finding of negligence on the part of the railroad company. *Parrish v. Atlantic Coast Line R.R.*, 221 N. C. 292, 20 S. E. 2d 299 (1942); Missouri *K. & T. Ry.* v. *Perino*, 118 Okla. 138, 247 P. 41, 47 A. L. R. 283 (1926). The effect of the obstruction is to impose upon both the motorist and the train crew a duty to use care commensurate with the hazardous situation that has been created. Blashfield,

Cyclopedia of Automobile Law & Practice, § 1795 (Perm. Ed., 1935).

The jury's problem was simply that of weighing Moore's negligence against the negligence of the train crew. This problem involved essentially a single question of fact. Neither the pleadings nor the instructions suggested that any negligence incident to the construction or maintenance of the depot might be separated from the other circumstances in the case and examined all by itself. The proximity of the depot to the grade crossing was merely an element to be considered by the jury in determining the standard of conduct applicable to the train crew and the traveling public. It could not serve as a basis for a finding of independently actionable negligence on the part of the corporate defendant. See *Ben M. Hogan & Co.* v. *Krug,* 234 Ark. 280, 351 S. W. 2d 451 (1961), for a full discussion of a similar question.

Thirdly, the plaintiffs attempted to prove that the railroad company had failed to erect a stop sign at this crossing after having been notified that the town council had declared it to be hazardous. Ark. Stat. Ann. §§ 75-641 and -642 (Repl. 1957). The proof, however, is manifestly deficient. The statute requires that the city council or mayor designate "by proper order or proclamation" the crossing that is deemed to be hazardous. Section 75-641. There is no proof that any action on the part of the mayor or council of Belleville was ever taken as a matter of record. The asserted municipal action could not be established by parol evidence. *Hencke* v. *Standford,* 66 Ark. 535, 52 S. W. 1 (1899). Moreover, the only pertinent communication that is shown to have been made to the railroad company was a letter in which the mayor requested that a stack of pulpwood be removed from the right-of-way. There is no competent evidence indicating that the location of the depot was ever made a basis for complaint by municipal action that complied with the statute.

The car in which Dewey Moore was killed was owned by his son Hershell. In the court below Hershell re-

covered judgment against all three defendants for the value of the car. It is not contended that Dewey was acting as his son's agent. Hence the judgment in favor of Hershell must be affirmed, for even though Dewey's negligence exceeded that of the defendants it would not be imputed to Hershell as the owner and bailor of the vehicle. *Mullally* v. *Carvill,* 234 Ark. 1041, 356 S. W. 2d 238 (1962).

The judgment for the value of the car is affirmed. The judgment for wrongful death is reversed and the cause dismissed.