2009 Ark. 93

The **MEDICAL ASSURANCE COMPANY, INC.,**
Appellant,

v.

Sherry **CASTRO,** Individually, and as parent and court-appointed guardian of the person and Estate of C.S., a minor, **Appellee.**

No. 08–1010.

Supreme Court of Arkansas.

Feb. 26, 2009.

Hardin, Jesson & Terry, PLC, by: Rex. M. Terry, Fort Smith, and Kirk T. Dougherty; and Mitchell, Williams, Selig, Gates & Woodyard, P.L.L.C., by: Michelle H. Cauley and Delena C. Hurst, Little Rock, for appellants.

Wilkes & McHugh, P.A., by: Susan Nichols Estes and Melody H. Piazza, Little Rock, for appellee.

## ELANA CUNNINGHAM WILLS, Justice.

A Sebastian County jury awarded damages to Sherry Castro, individually and as the parent and guardian of C.S., for negligent supervision and retention on the part of Sparks Regional Medical Center (Sparks). Sparks's primary liability insurer—The Medical Assurance Company, Inc. (Medical Assurance)—brings this appeal, arguing that the trial court erred in denying its motions for a directed verdict and for judgment notwithstanding the verdict. We affirm.

Six-year-old C.S. was admitted to Sparks in May 2005. A Sparks food service employee named Howard William Campbell, III (Campbell) delivered a meal to C.S. and later returned to his hospital room and sexually assaulted him. Campbell was charged with rape and pled guilty to the lesser charge of sexual indecency with a child.

Sherry Castro, as C.S.'s parent and guardian, filed a complaint against Sparks and Campbell for damages on behalf of herself and C.S. resulting from Campbell's sexual assault. After Sparks asserted charitable immunity in its amended answer, Castro filed an amended complaint naming Sparks's insurers as defendants under the direct action statute, Ark.Code Ann. § 23–79–210. The circuit court later granted Sparks's motion to dismiss based on its affirmative defense of charitable immunity. Castro nonsuited Campbell and several claims against the defendants after Medical Assurance filed a cross-claim against Campbell for "contribution and/or indemnity" in the event of an adverse judgment.

The case proceeded to trial on the remaining claims, and after Medical Assurance unsuccessfully petitioned the court for a directed verdict, the jury received ten interrogatories, including an interrogatory that allowed the jury to apportion any fault between Sparks and Campbell based on their respective negligence. The jury found that a preponderance of the evidence showed that Sparks's negligence was the proximate cause of C.S.'s injuries, and found no negligence on the part of Campbell. The jury awarded $15,000 in damages to Sherry Castro and $500,000 in damages to C.S. due to Sparks's negligence. The circuit court entered its final judgment on April 8, 2007, reflecting the jury's findings of negligence on the part of Sparks and none on the part of Campbell. The circuit court denied Medical Assurance's motion for judgment notwithstanding the verdict, or alternatively, a new trial. On appeal, Medical Assurance argues: (1) the trial court erred "by failing to overturn a jury verdict finding the employee not negligent, but holding the employer at fault for the negligent retention and supervision of the employee"; (2) there was insufficient evidence to support the jury's finding of negligent retention and supervision; and (3) there was insufficient evidence to support the award of future damages.

We first address Medical Assurance's argument that there was insufficient evidence to support the jury's determination that Sparks negligently supervised and retained Campbell, and, therefore, that the circuit court erred by denying its motions

for a directed verdict and judgment notwithstanding the verdict (JNOV). This court recently discussed the standard of review for a denial of a motion for a directed verdict and a denial of a motion for JNOV in *ConAgra Foods, Inc. v. Draper*, 372 Ark. 361, 364, 276 S.W.3d 244, 247–48 (2008) (citations omitted):

> Our standard of review of the denial of a motion for directed verdict is whether the jury's verdict is supported by substantial evidence. Similarly, in reviewing the denial of a motion for JNOV, we will reverse only if there is no substantial evidence to support the jury's verdict, and the moving party is entitled to judgment as a matter of law. Substantial evidence is that which goes beyond suspicion or conjecture and is sufficient to compel a conclusion one way or the other. It is not our place to try issues of fact; rather, we simply review the record for substantial evidence to support the jury's verdict. In determining whether there is substantial evidence, we view the evidence and all reasonable inferences arising therefrom in the light most favorable to the party on whose behalf judgment was entered. A motion for directed verdict should be denied when there is a conflict in the evidence, or when the evidence is such that fair-minded people might reach different conclusions.

The appellee's theory of recovery in this suit that is at issue on appeal, was that C.S. was injured due to Sparks's negligent supervision and retention of Campbell. Arkansas recognizes the torts of negligent supervision and negligent retention. *Saine v. Comcast Cablevision of Ark., Inc.*, 354 Ark. 492, 126 S.W.3d 339 (2003); *Am. Auto. Auction, Inc. v. Titsworth*, 292 Ark. 452, 730 S.W.2d 499 (1987). In *Saine*, the court explained:

Under each of these theories of recovery, the employer's liability rests upon proof that the employer knew or, through the exercise of ordinary care, should have known that the employee's conduct would subject third parties to an unreasonable risk of harm. As with any other negligence claim, a plaintiff must show that the employer's negligent supervision or negligent retention of the employee was a proximate cause of the injury and that the harm to third parties was foreseeable. It is not necessary that the employer foresee the particular injury that occurred, but only that the employer reasonably foresee an appreciable risk of harm to others.

*Id.* at 497, 126 S.W.3d at 342 (citations omitted). Thus, the appellee was required to show that Sparks's negligent supervision or retention of Campbell was the proximate cause of C.S.'s injuries, and that harm to a third party by Campbell was foreseeable, though not necessarily the particular harm C.S. suffered. *Id.*

The jury was presented with evidence of a previous incident at Sparks involving Campbell, in which a female patient alleged that Campbell touched her breast while he fondled himself and asked her if she "liked it." After a delay of several hours, a Sparks nursing supervisor notified the Fort Smith Police Department of the incident. The police conducted an investigation, but determined that there was insufficient evidence to charge Campbell.

The jury also considered evidence consisting of testimony and exhibits that included Sparks's own investigation of the previous incident, concluding that the female patient's allegations were unsubstantiated. Although the prior incident involving the female patient and Campbell was reported to the nursing staff shortly after it occurred, at approximately 5:00 p.m., the evidence showed that the nursing supervi-

sor on duty at the time did not start the investigation because she "didn't want to get caught up in it." The nursing supervisor who relieved her at 8:00 p.m. began an investigation and took written statements from the patient and her grandson, but these statements did not end up in the report. Further, the nursing supervisor did not notify Sparks security and Fort Smith police of the incident until 11:15 p.m., approximately six hours after the incident was reported and approximately three hours after Campbell finished his shift and left the hospital. Sparks's security manager Troy|₅Tedder was never able to positively identify the reason for the delay in reporting the incident, and also testified that he never initiated contact with anyone else involved in the incident after the police got involved, even though he was given the names of the nurses who were working the night the incident occurred.

Campbell later admitted to his supervisor that he touched the patient, but only to adjust her gown, which Campbell claimed had fallen, leaving her breast exposed. The supervisor testified that Campbell knew the hospital policy forbade him to touch a patient, and the supervisor's counseling of Campbell after the incident with the female patient, written in a "Sparks Health System Disciplinary Action Form," included a warning that Campbell "[n]ever make any physical contact with a patient and never touch a patient." (Emphasis original). Despite Campbell's admitted violation of hospital policy by touching a patient, Sparks allowed Campbell to resume his patient food service duties without restriction. Although there was some countervailing evidence concerning the prior incident involving the female patient, viewing the evidence and all reasonable inferences in the light most favorable to the appellee as this court must, the jury was presented with sufficient evidence to support its finding that Campbell's sexual assault on C.S. was foreseeable. There was testimony that Campbell knowingly violated hospital policy when he touched the female patient; Campbell admitted to his supervisor that he touched the female patient; and Sparks gave Campbell disciplinary counseling after the incident with the female patient that warned Campbell that he was to never touch a patient under any circumstances. It was|₆not necessary that Sparks foresee the particular injury that occurred to C.S., but only that Sparks reasonably foresee an appreciable risk of harm to others following the incident with the female patient. *See Saine*, 354 Ark. at 497, 126 S.W.3d at 342.

█ Next, Medical Assurance argues that employers are only liable for negligent supervision and retention when third parties are injured by a tortious act of an employee, and, therefore, "Arkansas law is clear that when an employer's liability is attributable solely to the allegedly tortious act of its employee, a finding in favor of the employee requires a similar finding as to the employer as a matter of law." Medical Assurance contends that the jury's finding of no negligence on the part of Campbell eliminates any possibility that Sparks could be held liable to Castro or C.S. We review this question of law under the de novo standard of review. *Bibbs v. Cmty. Bank of Benton*, 375 Ark. 150, 289 S.W.3d 393 (2008).

█ It appears that Medical Assurance confuses claims brought for negligent supervision and retention and those brought for an employer's vicarious liability under the doctrine of respondeat superior. This court stated in *Saine, supra,* that under the negligent supervision and negligent retention theories of recovery, "*employers are subject to direct liability for their negligent supervision or negligent retention of employees when third parties are injured as a result of the tortious acts of*

those employees." 354 Ark. at 497, 126 S.W.3d at 342 (emphasis added).[1]

Although Medical Assurance cites *Chicago, Rock Island & Pacific Railroad Co. v. Davis*, 239 Ark. 1059, 397 S.W.2d 360 (1965), to assert that the applicable "rule" in this case required a finding in its favor when the jury did not find Campbell negligent, that case involved a claim that the railroad was vicariously liable for the tortious conduct of individual railroad employees in a wrongful death action. Under the doctrine of respondeat superior, an employer can be held liable for the tortious conduct of an employee or agent if there is evidence that the conduct occurred within the employee's scope of the employment. *Cooper Clinic, P.A. v. Barnes*, 366 Ark. 533, 237 S.W.3d 87 (2006).

Here, the appellee's theory of recovery was not that Sparks was vicariously liable under respondeat superior, requiring a verdict against Campbell. The claim was brought under the theories of negligent supervision and retention on the part of Sparks, and Medical Assurance ignores the complete "rule" as stated in *Davis:*

> The rule is that if the employer's liability is attributable *solely* to the employee's negligence, a verdict in favor of the employee exonerates the employer as well. But if there is *independent actionable negligence* on the part of the employer then he may be held liable *even though the employee is found to have been free from fault.*

239 Ark. at 1060, 397 S.W.2d at 361 (emphasis added). Thus, although a jury's exoneration of an employee also exonerates the employer when a claim involves the employer's vicarious liability under respondeat superior, under a claim for negligent supervision and retention an employer is directly liable for *its own* "independent actionable negligence." *Id.* Because the negligent supervision and retention claim in the present case involved Sparks's *sole, direct liability* as Campbell's employer, the trial court did not err in denying Medical Assurance's motion for a directed verdict and motion for JNOV on this basis.[2]

For its final point on appeal, Medical Assurance argues that the circuit court erred in denying its motions for a directed verdict and JNOV because there was insufficient evidence to support an award of future damages for C.S.'s injuries. The jury rendered its verdict in this case upon a general verdict form, which did not specify the award of damages. When a jury's verdict is rendered on a general verdict form, it is a finding upon the whole case; this court will not speculate on what the jury found where a general jury verdict is used. *Union Pac. R.R. Co. v. Barber*, 356 Ark. 268, 293, 149 S.W.3d 325, 341 (2004) ("When special interrogatories concerning liability or damages are not requested, and this court is left in the position of not knowing the basis for the jury's verdict, we will neither question nor theorize about the jury's findings.").

Affirmed.

1. Medical Assurance conceded that Campbell committed the assault at trial, and the jury heard undisputed testimony that Campbell committed the assault and pled guilty to it.

2. Medical Assurance also asserts that "under Arkansas law, Appellants had a right to have the jury determine the respective fault of all alleged tortfeasors for the purpose of apportioning fault among all such alleged tortfeasors." Because the jury found Campbell not negligent—of his own negligent supervision and retention—then there was obviously no fault to apportion; Sparks was the sole tortfeasor according to the jury's finding.