# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 09-2393

_____

Gelpi Boudwin,                              *
                                            *
        Plaintiff – Appellant,              *
                                            *
    v.                                      *    Appeal from the United States
                                            *    District Court for the Eastern
Hastings Bay Marina, Inc., doing            *    District of Arkansas.
business as Little Rock Yacht Club,         *
in personam; Lovie Dovie, in rem,           *
also known as Lucy Dovie,                   *
                                            *
        Defendants – Appellees.             *

_____

Submitted: April 12, 2010
Filed: August 3, 2010

_____

Before BYE, BEAM, and GRUENDER, Circuit Judges.

_____

BYE, Circuit Judge.

Gelpi Boudwin appeals the district court's[1] grant of summary judgment in favor of Hastings Bay Marina in Boudwin's negligence action for injuries he sustained when he fell into a hatch in a boat on the marina's premises. Boudwin argues he

_____

[1]The Honorable J. Leon Holmes, United States District Judge for the Eastern District of Arkansas.

raised a genuine issue of material fact as to whether Hastings Bay was liable for injuries caused by its employee. We affirm.

I

In an effort to purchase a houseboat, Gelpi Boudwin enlisted the aid of his son-in-law, Tim Shelton, to contact local marinas and inquire whether they had any boats for sale. One of these marinas, Hastings Bay Marina, informed Shelton there were a couple of boats for sale at the marina and Shelton and Boudwin could view the boats if they desired. The person on the telephone also told Shelton to contact Sean Gossage, Harbor Master at the Yacht Club, when he arrived to view the boats. Gossage's duties at the club included renting slips, pumping fuel, keeping the grass and grounds cleaned, and hauling boats in and out of the water.

Upon arriving at the marina, Shelton asked to be directed to Gossage. Thereafter, Gossage, Boudwin, Shelton, and Shelton's wife inspected the first boat that was for sale without incident. The group then proceeded to the second boat for sale moored at Hastings Bay, the Lovie Dovie.[2] When they reached the Lovie Dovie, the group discovered the interior cabin of the boat was locked. Gossage told the group he would break into the boat to allow them to inspect the internal cabin, to which Boudwin and Shelton protested. Gossage, who lived in a vessel moored in the slip next to the Lovie Dovie, assured Boudwin it was okay to break into the boat because "they don't have a problem with us doing this."

After entering and inspecting the inside cabin, Boudwin wished to inspect the bottom of the boat. Upon locating the hatch cover, Shelton initially tried to pry the

---

[2]It is undisputed that Hastings Bay did not own the Lovie Dovie, and rather the boat was simply moored at the marina by its private owners. Hastings Bay asserts it was not in the business of selling boats and Gossage attempted to show the vessel as a favor to the then-owners. Boudwin ultimately purchased the boat from the owners.

-2-

cover loose but was unsuccessful. Gossage was able to remove the hatch cover shortly thereafter. After inspecting the boat's instrument control panel, Boudwin accidentally stepped into the hole where the hatch cover was located and sustained physical injury after falling through the opening.

Boudwin apparently purchased the Lovie Dovie at some point after the accident. On June 1, 2004, Hastings Bay entered into a slip rental agreement with Melodye Boudwin (Gelpi Boudwin's wife) for the Lovie Dovie. Boudwin failed to make payments for the slip rental and Hastings Bay eventually obtained a marina operator's lien on the boat and on August 24, 2006, sold the Lovie Dovie to satisfy Boudwin's outstanding debt to the Marina.

On March 28, 2007, Boudwin filed this negligence action against Hastings Bay, joining the Lovie Dovie *in rem*. Hastings Bay answered and counterclaimed for abuse of process and tortious interference with contract, claiming the lawsuit was intended to interfere with the transfer of the boat and was an attempt to regain possession of the Lovie Dovie. Hastings Bay subsequently brought a motion for summary judgment, contending it could not be liable because it did not have ownership, possession, or control of the Lovie Dovie. The district court granted summary judgment in favor of Hastings Bay. Boudwin appealed, but the appeal was dismissed as premature because the district court had not entered judgment and the counterclaims were still pending. The district court subsequently entered judgment on Boudwin's claims and the parties agreed to stay the trial on the counterclaims until the resolution of this appeal. Despite the stay, we maintain jurisdiction over this appeal because the district court certified the case for appeal under Federal Rule of Civil Procedure 54(b).

II

We review a district court's decision to grant summary judgment de novo. Anda v. Wickes Furniture Co., Inc., 517 F.3d 526, 531 (8th Cir. 2008). Summary

judgment is appropriate where there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). We view the evidence, and make all reasonable inferences from the evidence, in favor of the nonmoving party. Sitzes v. City of West Memphis Ark., 606 F.3d 461, 465 (8th Cir. 2010). "Disputes that are not 'genuine,' or that are about facts that are not 'material,' will not preclude summary judgment." Id. (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986)).

In a diversity action such as this, we apply the substantive law of the forum State, which is Arkansas in this matter.[3] Blankenship v. USA Truck, Inc., 601 F.3d 852, 856 (8th Cir. 2010). "Under Arkansas law, in order to prevail on a claim of negligence, the plaintiff must prove that the defendant owed a duty to the plaintiff, that the defendant breached the duty, and that the breach was the proximate cause of the plaintiff's injuries." Fordyce Bank & Trust Co. v. Bean Timberland, Inc., 251 S.W.3d 267, 270-71 (Ark. 2007). "Proof of an accident, with nothing more, is not sufficient to make out a claim for negligence." Coca-Cola Bottling Co. v. Gill, 100 S.W.3d 715, 724 (Ark. 2003). In this case, Boudwin's opposition to summary judgment is based on a number of different legal theories, including respondeat superior, actual authority, and apparent authority. We address each theory in turn.

Generally, plaintiffs seek to hold employers responsible for the negligent acts of their employees through the doctrine of respondeat superior. Med. Assurance Co., Inc. v. Castro, 302 S.W.3d 592, 597 (Ark. 2009). Under the doctrine, an employee's

---

[3]Before reaching the merits, the district court determined this matter did not satisfy the connection test required to invoke maritime jurisdiction, negating Boudwin's initial invocation of maritime jurisdiction. See Jerome B. Grubart, Inc. v. Great Lakes Dredge & Dock Co., 513 U.S. 527, 534 (1995) ("[A] party seeking to invoke federal admiralty jurisdiction pursuant to 28 U.S.C. § 1333(1) over a tort claim must satisfy conditions both of location and of connection with maritime activity."). However, the court concluded it had diversity jurisdiction, and thus the dispute was governed by Arkansas law. The parties do not dispute this holding on appeal.

tortious conduct may cause the employer to be held liable if the conduct of the employee or agent occurred within the scope of his employment. Id. (citing Cooper Clinic, P.A. v. Barnes, 237 S.W.3d 87, 92 (Ark. 2006)). In determining whether an employee acted within the scope of his employment, Arkansas courts look to whether the employee is acting in the interests of his employer, as opposed to acting solely in his personal interest. Barnes, 237 S.W.3d at 92-93.

Hastings Bay argues that Gossage was not acting within the scope of his employment when he showed the Lovie Dovie to Boudwin in order to gauge his interest in purchasing the boat. We agree. It is undisputed that Hastings Bay did not own, possess, manage, or control the Lovie Dovie; nor is Hastings Bay in the business of selling boats. Rather, Gossage was unequivocal in his testimony that he was showing the Lovie Dovie for sale as a favor to the then-owners. Gossage's actions therefore were not taken for the benefit of Hastings Bay, and his conduct fell outside his scope of employment because his position as harbor master did not involve selling, or brokering sales of, the independently owned vessels at the marina. As a result, no reasonable jury could find in favor of Boudwin under typical respondeat superior grounds.

Boudwin also contends Gossage was Hastings Bay's agent under theories of actual and apparent authority. As a result, Boudwin argues, Hastings Bay is vicariously liable for Gossage's negligence. We disagree.[4] First, for the reasons set forth above, Gossage did not maintain actual authority because Hastings Bay did not

---

[4]The district court noted Boudwin failed to cite, nor did the court find, any Arkansas case that holds a principal liable for a tort committed by an agent acting outside the scope of his employment but under apparent authority. The court also noted the agency theories argued by Boudwin are typically relevant in contract cases, not tort cases such as the instant matter. We need not address these issues because even assuming Boudwin's agency arguments are properly made in this case, he fails to present a triable issue of fact under these theories for the reasons set forth herein.

direct him to engage in the sale of the Lovie Dovie, much less to break into and enter the vessel in order to accomplish such a purpose. See Sterne, Agee & Leach, Inc. v. Way, 270 S.W.3d 369, 376 (Ark. App. 2007) (noting it was not clear whether actual authority was conferred on the agent because he was not acting on behalf of the principal); Trs. of the Graphic Commc'ns Int'l Union Upper Midwest Local 1M Health & Welfare Plan v. Bjorkedal, 516 F.3d 719, 727 (8th Cir. 2008) ("Actual authority is that authority given by the principal to the agent to act on its behalf, and it requires that the principal manifest its consent to the agent's ability to bind the principal.") (citing Restatement (Third) of Agency § 3.01 (2006)); 3 Am. Jur. 2d Agency § 70 ("Actual authority is such as a principal intentionally confers upon the agent, or intentionally or by want of ordinary care allows the agent to believe himself or herself to possess.").

In addition, Boudwin fails to satisfy the elements necessary to support a showing of apparent authority. "Under Arkansas law . . . apparent authority is such authority as a principal proclaims or permits, such authority which a principal by lack of care causes or allows, or such authority as a reasonably prudent man using diligence and discretion would naturally suppose." Wal-Mart Stores, Inc. v. Crist, 855 F.2d 1326, 1331 (8th Cir. 1988). To support his theory, Boudwin must demonstrate (1) Hastings Bay held Gossage "out to the public as possessing sufficient authority to embrace the particular act in question, or knowingly permitted him to act as having such authority;" and (2) that Boudwin "knew of the facts and acting in good faith had reason to believe and did believe that the agent possessed the necessary authority." Id. (citing Cent. Surety & Ins. Corp. v. O. & S. Wholesale Co., 101 S.W.2d 167, 172 (Ark. 1937)).

To satisfy these elements, Boudwin relies heavily on Shelton's telephone call to the marina wherein an unnamed employee directed Shelton to Gossage in response to Shelton's inquiry regarding boat sales. Boudwin argues this was a manifestation from Hastings Bay that Gossage had the authority to act on its behalf. However, even

assuming this to be true, we agree with the district court that no reasonable person would have believed Hastings Bay authorized Gossage to break into the boat in order to show Boudwin the inside cabin, and therefore Boudwin cannot meet the second element. "Apparent authority of an agent is . . . such authority as a reasonably prudent man, using diligence and discretion, in view of the principal's conduct, would naturally suppose the agent to possess." Found. Telecomm., Inc. v. Moe Studio, Inc., 16 S.W.3d 531, 536 (Ark. 2000). The third party's belief must be predicated on the principal's conduct, not the agent's conduct, because no agent can create evidence of apparent authority on his own. Id. Here, no reasonably prudent person would believe Gossage had the authority to break into the Lovie Dovie, irrespective of Gossage's statements to the contrary, which are irrelevant for purposes of the apparent authority inquiry. See Hunt v. Pyramid Life Ins. Co., 732 S.W.2d 167, 170 (Ark. 1987) ("The authority of an agent must be shown by positive proof or by circumstances that justify the inference that the principal has assented to the acts of his agent.") (quoting Mack v. Scott, 323 S.W.2d 929, 931-32 (Ark. 1959)). As the district court noted, a reasonable person would expect that if Gossage was acting on behalf of Hastings Bay, he would have maintained a key in order to properly enter the vessel. Indeed, Boudwin and Shelton were initially uncomfortable with breaking into the boat as Gossage suggested. Under these circumstances, the district court did not err in granting summary judgment on Boudwin's apparent authority argument because Boudwin did not maintain a reasonable belief of Gossage's authority.

III

For the foregoing reasons, we affirm the district court's grant of summary judgment in favor of Hastings Bay.

_____