2011 Ark. App. 746

**Jose S. PADILLA, Jr., M.D., Appellant**

v.

**Mitchell ARCHER, as Special Administrator of the Estate of Paul R. Archer, and Marie S. Archer, Appellees.**

No. CA 10–1307.

Court of Appeals of Arkansas.

Dec. 7, 2011.

Rehearing Denied Jan. 11, 2012.

J. Phillip Malcom, Little Rock, for appellant.

Frank H. Bailey, Sach D. Oliver and T. Ryan Scott, Bentonville, Brian Gene Brooks, Greenbrier, for appellee.

JOHN MAUZY PITTMAN, Judge.

This is a medical-negligence case. Dr. Jose S. Padilla, Jr., brings this appeal of a jury's verdict in favor of appellee Paul Archer. On appeal, Dr. Padilla argues that the circuit court erred in denying his motions for a mistrial and a motion for a new trial because the court allowed Dr. Frederick Bentley, the doctor who treated Archer after Dr. Padilla's surgery, to give unqualified expert testimony and allowed the jury to view the videotape of Dr. Bentley's deposition testimony a second time. Dr. Padilla also argues that the circuit court erred in denying his motion for a directed verdict in that Archer failed to meet his burden to provide expert testimony concerning the standard of care under the locality rule. We affirm.

## Background

On June 11, 2008, Dr. Padilla, a general surgeon, performed gallbladder surgery on

Archer.[1] During the surgery, Dr. Padilla allegedly clipped the wrong duct, allowing bile to drain directly into Archer's abdominal cavity. Archer was ultimately transferred to UAMS where he was treated by Dr. Bentley for the complications of the surgery.

On November 18, 2008, Archer filed suit against Dr. Padilla, later amended.[2] The complaint sought compensatory and punitive damages.[3]

On October 22, 2009, Dr. Bentley's videotaped deposition was taken by agreement to be used in lieu of his live testimony at trial. During the deposition, Dr. Bentley stated that he was not asked to opine on whether Dr. Padilla violated the standard of care in this case and that he was not prepared to do so.

On June 7, 2010, Dr. Padilla filed a motion in limine seeking to prevent Dr. Bentley from giving testimony as to the standard of care because (1) it was irrelevant due to the fact that Dr. Bentley was a treating physician; (2) Dr. Bentley had not been designated as an expert witness in the case; and (3) Dr. Bentley was not qualified to give expert testimony under the locality rule. In response, Archer argued that Dr. Padilla had waived the argument because he did not object to Dr. Bentley's testimony at the time his deposition was taken.

At the hearing on the motion just prior to trial, Dr. Padilla argued that Dr. Bentley gave expert testimony without first being identified as an expert in the case. In response, Archer argued that Dr. Bentley never testified that Dr. Padilla violated the standard of care and that the objection had been waived because it was not made at the time Dr. Bentley gave his deposition. The circuit court ruled that objections to Dr. Bentley's testimony were waived because they were not made during the deposition.

The case was tried to a jury from June 14 to June 16, 2010. Dr. Bentley's deposition was played to the jury, and Dr. Padilla renewed the objections that he had made in his motion in limine. At the close of Archer's case and again at the close of all of the evidence, Dr. Padilla moved for a directed verdict. He argued that Dr. Wayne Flye, Archer's designated expert witness, did not offer proper testimony as to the standard of care in Harrison, Arkansas, or similar communities as required by the locality rule. The circuit court denied the motions, and the case was submitted to the jury.

During its deliberations, the jury requested a transcript of Dr. Bentley's deposition. The circuit court convened counsel and discussed the options available, namely, to tell the jury to rely on its notes or to replay the entire video deposition. Archer asked that the circuit court replay the video, but Dr. Padilla objected, stating that the video would unduly emphasize Dr. Bentley's testimony. Dr. Padilla also pointed out that there was a transcript of Dr. Bentley's deposition and that the court

---

1. Archer died after this appeal was perfected. This court granted a motion to substitute a special administrator as an appellee in place of Archer on March 16, 2011. Marie Archer, Archer's widow, filed a derivative claim. She is also an appellee in this appeal. For ease of writing, we refer to Archer in the singular.

2. Also named as a defendant was the insurance carrier for North Arkansas Regional Medical Center, the hospital where Dr. Padil-

la performed the surgery. Archer dismissed the first insurance company and named a second company as the proper carrier. This insurance company was ultimately dismissed from the lawsuit.

3. The circuit court granted summary judgment in favor of Dr. Padilla on the claim for punitive damages.

should provide that to the jury instead of replaying the video deposition. After ruling that the transcript could not be provided to the jury because it had not been admitted into evidence, the court advised the jury that the video deposition of Dr. Bentley was presented in lieu of his live testimony and, under those circumstances, the court expected the jurors to rely on their memories and notes. However, the court also gave the jury the option of viewing the entire video deposition. The jury chose to view the video deposition again.

Dr. Padilla then moved for a mistrial. His argument was based on grounds that there was no precedent for the replaying of the video deposition for the jury and that it overemphasized Dr. Bentley's testimony. He also noted that this had the effect of allowing Archer to reopen his case once the jury had begun deliberations and gave Archer a "second bite" because the jury was able to take new notes from the video. The circuit court denied the motion for a mistrial, noting that there were criminal cases where the replaying of testimony in its entirety was upheld.

After having the deposition replayed, the jury continued its deliberations. Ten members of the jury found in favor of Archer and awarded damages of $400,000. Judgment was entered on the jury's verdict on June 17, 2010.[4]

Dr. Padilla filed a motion seeking a new trial on July 1, 2010. The motion argued that a new trial was warranted because Dr. Bentley gave testimony concerning the standard of care despite the fact that Dr. Bentley stated in his deposition that he was not prepared to express an opinion regarding the standard of care. Dr. Padilla also sought a new trial because the

circuit court had erroneously ruled that Dr. Padilla had waived his objections by not making them at the time of Dr. Bentley's deposition. Finally, Dr. Padilla sought a new trial on the basis that the court had allowed Dr. Bentley's deposition to be replayed to the jury. The circuit court denied the motion for a new trial on July 23, 2010. Dr. Padilla filed his notice of appeal on July 23, 2010.

### Standard of Review

Our standard of review of the denial of a motion for directed verdict is whether the jury's verdict is supported by substantial evidence. *The Medical Assurance Co., Inc. v. Castro*, 2009 Ark. 93, 302 S.W.3d 592. Substantial evidence is that which goes beyond suspicion or conjecture and is sufficient to compel a conclusion one way or the other. *Id.* It is not our place to try issues of fact; rather, we simply review the record for substantial evidence to support the jury's verdict. *Id.* In determining whether there is substantial evidence, we view the evidence and all reasonable inferences arising therefrom in the light most favorable to the party on whose behalf judgment was entered. *Id.* A motion for directed verdict should be denied when there is a conflict in the evidence, or when the evidence is such that fair-minded people might reach different conclusions. *Id.* Likewise, on appeal from the denial of a motion for a new trial, this court also determines whether the jury's verdict is supported by substantial evidence. *Wal-Mart Stores, Inc. v. Tucker*, 353 Ark. 730, 120 S.W.3d 61 (2003).

### Arguments on Appeal

#### I. Dr. Bentley's Testimony

Dr. Padilla argues that the circuit court erred in several respects concerning Dr.

4. That judgment was vacated on Dr. Padilla's motion because the judgment provided an erroneous rate of postjudgment interest. A corrected judgment was entered on July 15, 2010.

Bentley's testimony. His first argument is that the circuit court erred in ruling that he had waived his objections to Dr. Bentley's testimony by not making them at the time of the deposition.

Arkansas Rule of Civil Procedure 32 governs use of depositions in court proceedings and provides in pertinent part as follows:

> (b) Objections to Admissibility. Subject to the provisions of Rule 28(b) and subdivision (d)(3) of this rule, objection may be made at the trial or hearing to receiving in evidence any deposition or part thereof for any reason which would require the exclusion of the evidence if the witness were then present and testifying.
>
> . . . .
>
> (d) Effect of Errors and Irregularities in Depositions.
>
> . . . .
>
> (3) As To Taking Of Deposition.
> (A) Objections to the competency of a witness or to the competency, relevancy or materiality of testimony are not waived by failure to make them before or during the taking of the deposition, unless the ground of the objection is one which might have been obviated or removed if presented at that time.
> (B) Errors and irregularities occurring at the oral examination in the manner of taking the deposition, in the form of the questions or answers, in the oath or affirmation, or in the conduct of parties, and errors of any kind which might be obviated, removed, or cured if promptly presented, are waived unless seasonable objection thereto is made at the taking of the deposition.

In addition to Rule 32, Dr. Padilla also relies on the decisions in *Benson v. Shuler Drilling Co., Inc.,* 316 Ark. 101, 871 S.W.2d 552 (1994); *Hill v. Billups,* 85 Ark. App. 166, 148 S.W.3d 288 (2004), as support for his argument. However, neither *Benson* nor *Hill* concern which objections must be made at the time of the deposition or be waived because the issues in those cases were ones that could not be cured at the time of the depositions.

Here, the objections made in the motion in limine were that Dr. Bentley's testimony was not relevant because he was a treating physician, that he was not designated as an expert witness, and he was not qualified to express an opinion under the locality rule. The only objection Dr. Padilla argued at the hearing on his motion in limine was that Dr. Bentley was not designated as an expert. These two arguments are so intertwined as to be one argument because both hinge on the fact that Dr. Bentley had not been qualified as an expert. We hold that the circuit court did not err in ruling that Dr. Padilla waived the objection by not making it at the time of the deposition because it was the type of objection that could have been obviated or removed had it been made at the time of the deposition. Ark. R. Civ. P. 32(d)(3)(A); *Cordle v. Allied Chemical Corp.,* 309 F.2d 821 (6th Cir.1962). Dr. Bentley's deposition was taken in October 2009. There was no scheduling order entered by the circuit court setting deadlines for the designation of experts or deadlines for dispositive motions. Despite this, Dr. Padilla allowed seven months to pass after the deposition and did not file his motion in limine until one week prior to trial. The motion was not argued until the morning of the first day of the trial. Had Dr. Padilla objected in a timely manner, Archer could have amended his discovery answers so as to designate Dr. Bentley as an expert.[5] To the extent that Dr. Padilla's

---

5. Moreover, Dr. Bentley was a treating physician. As such, his knowledge about the case

objection goes to Archer's failure to lay a proper foundation to permit Dr. Bentley to give testimony as to the standard of care, we hold that the circuit court did not err because the types of arguments and objections Dr. Padilla makes concerning Dr. Bentley's testimony are the types that could have been remedied had Dr. Padilla objected at the deposition. *Cordle, supra.* For example, Dr. Padilla argues that Dr. Bentley showed no familiarity with the standard of care in Harrison, Arkansas, or in a similar location. However, if Dr. Padilla had objected, counsel for Archer could have asked other questions so as to lay a proper foundation. *Id.*

■ Dr. Padilla next argues that the circuit court erred in allowing Dr. Bentley's video deposition to the replayed to the jury. We disagree. More than one hundred years ago, our supreme court has held that it was not error for the court to permit witnesses to restate their testimony on a certain matter to a jury in the presence and at the direction of the circuit court after the jury had retired to consider its verdict, when the jury returned into court and stated its desire that this be done. *Bennifield v. State,* 62 Ark. 365, 35 S.W. 790 (1896), *overruled on other grounds, Tallman v. State,* 151 Ark. 108, 235 S.W. 389 (1921). Thus, a request by the jury to have portions of the testimony read or replayed is within the discretion of the circuit court and its ruling will not be held to be error in the absence of a manifest abuse of that discretion. |₉*McKinney v. State,* 303 Ark. 257, 797 S.W.2d 415 (1990); *Gardner v. State,* 263 Ark. 739, 569 S.W.2d 74 (1978).

■ Citing *McKinney* and Arkansas Code Annotated section 16–64–115 (Repl. 2005),[6] Dr. Padilla argues that there must be a disagreement among the jurors before the circuit court can allow the video deposition to be replayed and that there was no evidence of such a disagreement.[7] However, a circuit court may infer disagreement among the jury from its request to see or hear evidence during deliberations, and should honor any request of the jury to reconsider specific evidence in the absence of some compelling reason not to grant it. *See Davlin v. State,* 313 Ark. 218, 853 S.W.2d 882 (1993). Juries routinely ask to review trial testimony when they deliberate. The requests are a clear sign that the evidence sought is important to the deliberative process. They also reflect the reality that jurors cannot be expected to have perfect recall of every bit of evidence introduced during a trial.

Here, the jury asked for a transcript of Dr. Bentley's deposition but no transcript

was not acquired in "anticipation of litigation" and he need not have been disclosed as an expert pursuant to Ark. R. Civ. P. 26(b)(4). *See also Alessio v. Crook,* 633 S.W.2d 770 (Tenn.App.1982) (analyzing similar language in Tennessee version of Rule 26). Further, the circuit court had the discretion to permit Dr. Bentley to testify as an expert witness even though he had not been designated as such. *Wade v. Grace,* 321 Ark. 482, 902 S.W.2d 785 (1995); *Breslau v. McAlister,* 72 Ark.App. 124, 35 S.W.3d 321 (2000).

6. Section 16–64–115 provides as follows:
   After the jury has retired for deliberation, if there is a disagreement between them as to any part of the testimony or if they desire to be informed as to any point of law arising in the case, they may request the officer to conduct them into court, where the information required shall be given in the presence of, or after notice to, the parties or their counsel.

7. The corresponding statute applicable to criminal trials, which contains language virtually identical to this statute, is found at Ark.Code Ann. § 16–89–125(e). Thus, the considerations in those cases are just as relevant in criminal cases and vice versa. *See Dickerson Constr. Co. v. Dozier,* 266 Ark. 345, 584 S.W.2d 36 (1979); *Lowry v. State,* 90 Ark.App. 333, 205 S.W.3d 830 (2005).

was available and, where the circuit court replayed Dr. Bentley's entire testimony, including both direct and cross-examination, in open court with all parties present, we cannot say that the circuit court failed to comply with the requirements of section 16–64–115.

## II. *Dr. Flye's Testimony*

■ Dr. Padilla next argues that the circuit court erred in denying his motion for a directed verdict on the basis that Archer failed to meet his burden of proving the standard of care under the locality rule.

Dr. Wayne Flye, Archer's designated expert, testified that he was familiar with the medical community in Harrison, Arkansas, by way of his research into the medical record in the case, his review of testimony given in the case, and his familiarity with the particular procedure performed on Paul Archer. Dr. Flye also established that he was familiar with the standard of care in similar medical communities. He testified that he grew up in a town of similar size and that he receives patients from similar medical communities. In addition to teaching at Washington University in St. Louis, Dr. Flye also sees patients at Barnes–Jewish Hospital, the hospital affiliated with the university. Further, he consults at a small VA hospital, and he sees patients once or twice a month in a clinic in southern Illinois that he said is similar to Harrison. According to Dr. Flye, approximately 750,000 gallbladder surgeries are performed each year, making it the second most frequent type of surgery in the nation. He testified on cross-examination that gallbladder disease is high occurrence and is treated in almost any hospital in the country. Dr. Flye further testified that the equipment and the expectations for this surgery are the same in Harrison and the places where he performs the procedure.

Dr. Flye's opinion about the standard of care made reference to guidelines promulgated by the Society of American Gastrointestinal and Endoscopic Surgeons (SAGES). He testified that the SAGES guidelines set the standard of care in Harrison and similar communities and are relied on by careful physicians in communities like Harrison. According to Dr. Flye, a surgeon in Harrison, Arkansas, or a similar community, with ordinary skill and learning should know about the SAGES guidelines, but Dr. Padilla said in his deposition that he did not. The guidelines suggest that if the surgeon cannot properly visualize the structures of the gallbladder and liver while performing a laparoscopic cholecystectomy, the surgeon should convert to an open procedure to safely complete the operation. Dr. Padilla did not convert to an open procedure. Dr. Flye testified that Dr. Padilla's operative notes indicated that it was a difficult procedure, with dense adhesions and inflammation, and that conversion to an open procedure may have been indicated, but was not absolute. Dr. Flye also described how Dr. Padilla's notes indicated how he (Dr. Padilla) was unable to properly visualize the proper duct. He also said that Dr. Padilla's testimony was that he was never in doubt as to what he was cutting.

Dr. Padilla's motion for a directed verdict was correctly denied. First, the Arkansas Supreme Court has held that the similarity of communities in a medical-malpractice case should not depend on population or area, but rather upon their similarity from the standpoint of medical facilities, practices, and advantages. *Gambill v. Stroud,* 258 Ark. 766, 531 S.W.2d 945 (1976); *see also Wolford v. St. Paul Fire & Marine Ins. Co.,* 331 Ark. 426, 961 S.W.2d 743 (1998). Here, Dr. Flye testified that

the equipment and the expectations for this surgery are the same in Harrison and the smaller towns similar to Harrison where he performs the ⌐12procedure, tying his practice to the conditions in Harrison. Second, Dr. Flye testified that a surgeon in Harrison, Arkansas, or a similar community, with ordinary skill and learning, should know to convert to an open procedure when the anatomy and structures in the area of the gallbladder are not clearly discernable.

Affirmed.

VAUGHT, C.J., and GRUBER, J., agree.