BART F. VIRDEN, Judge
Appellant Hope Medical Park Hospital d/b/a Medical Park Doctors Group (Hope) appeals from a Hempstead County jury's verdict in favor of appellees Carrie and Thomas Varner on their negligence claim, which arose after Carrie fell and was injured on the hospital's grounds. Hope argues that it was entitled to judgment as a matter of law because it owed Carrie no duty to warn her of a known danger. We reverse and dismiss.
I. Procedural History
In January 2012 the Varners filed an amended complaint against Hope and other defendants[1] alleging negligence, along with a derivative claim on behalf of Carrie's spouse, stemming from an incident that occurred on February 18, 2009. Carrie alleged that she had been walking between a parking lot and the hospital's entrance when she tripped over a tree root, fell, and sustained injuries to her head, left knee, right shoulder, and back.
A jury trial was held on March 7 and 8, 2017. The jury returned a verdict for Carrie and Thomas and awarded damages of $350,000 and $0, respectively. Hope filed a *821 motion for judgment notwithstanding the verdict (JNOV) or, alternatively, a motion for a new trial. Following a hearing, both motions were denied. Hope appeals from the trial court's denial of its motion for directed verdict at trial and its subsequent motion for JNOV.
II. Standard of Review
Our standard of review of the denial of a motion for directed verdict is whether the jury's verdict is supported by substantial evidence. Med. Assurance Co., Inc. v. Castro , 2009 Ark. 93, 302 S.W.3d 592. Similarly, in reviewing the denial of a motion for JNOV, we will reverse only if there is no substantial evidence to support the jury's verdict, and the moving party is entitled to judgment as a matter of law. Id. Substantial evidence is that which goes beyond suspicion or conjecture and is sufficient to compel a conclusion one way or the other. Id. In determining whether there is substantial evidence, we view the evidence and all reasonable inferences arising therefrom in the light most favorable to the party on whose behalf judgment was entered. Id.
III. Trial Testimony
Carrie testified that she had worked as a nurse at the hospital in Hope for approximately fifteen years before the accident. She said that she had worked all three shifts at the hospital. She testified that there was a median with a tree in the middle of it located between a parking lot and the front entrance of the hospital. She said that she had been crossing the median off and on for fifteen years. According to Carrie, she was aware that there were tree roots in the median sticking up two to three inches from the ground.
Carrie testified that she was at the hospital on February 18, 2009, to sit for a deposition. She said that she had parked near the median, walked across the median, and entered the hospital. In the front office, she briefly spoke with the secretary, and because she had time before the start of her deposition, she returned to her car to get some paperwork. She said that it was approximately 1:15 p.m. when she was walking back to her car. Carrie testified that she could see the tree roots on the day of the accident but recalled that it was "kinda shadowy" under the tree. Carrie testified, "I thought I was walking carefully, and next thing I knew I started stumbling. I had hit the root, and I couldn't regain my balance, and I just kept going head first kinda, and I hit the bumper of a Jeep." Carrie testified that she had been wearing nurse's shoes that day; she had not been in a hurry; and she did not have her phone with her. Carrie agreed on cross-examination that she thought she could avoid tripping on the tree roots if she was being careful and paying attention.
According to Carrie, there were no signs directing foot traffic between the parking lot and the hospital. She said that walking across the median was the shortest route in that it was a direct path to the hospital's front entrance. Carrie said that she also crossed the median to avoid walking through traffic on each side of the median. She agreed that she had earlier testified in a deposition that she could have walked around the tree roots.
Dr. Dale Goins, Carrie's coworker and her doctor, testified that he had worked at the hospital since 1985 under various owners. He said that he was familiar with the area in front of the hospital and that he had crossed the median himself and had seen others cross it. He confirmed that there were tree roots in the median. According to Dr. Goins, crossing the median was the fastest way to get to the other side, but it was not the only route. He said, *822 "I could've just as easily walked around the tree and the landscaped island as I could've walked underneath it."
Kelly Holybee testified that she had worked at the hospital since 1978 or 1979. She said that in February 2009 she was the hospital's safety officer and that it was her job to protect the employees, staff, visitors, and physicians inside the building and on the grounds. She said that the tree roots in the median were obvious but that she thought a person could walk over the median safely if he or she was paying attention. Holybee testified that, although people crossed the median, it was not a pathway. She confirmed that there were no signs telling people not to walk across the median. She said that no one had reported any concerns to her about the safety of the area in the median. Holybee stated that if she had thought the area was unsafe she would have done something about it. She agreed on cross-examination that it would be harder to see the tree roots when they are shaded than when the sunlight is shining through the tree. She pointed out that in February there would not have been leaves on the tree.
IV. Discussion
To prevail on a claim of negligence, the plaintiff must prove that the defendant owed a duty to the plaintiff, that the defendant breached the duty, and that the breach was the proximate cause of the plaintiff's injuries. Duran v. Sw. Ark. Elec. Coop. Corp. , 2018 Ark. 33, 537 S.W.3d 722. Duty arises out of the recognition that the relation between individuals may impose upon one a legal obligation for the benefit of another. Id. Hope argues that it owed no duty to Carrie because her testimony establishes beyond dispute that she knew the tree root was lying in her path before she tripped over it.
The question of whether a duty is owed is always a question of law and never one of fact for the jury. Locke v. Cont'l Cas. Co. , 2013 Ark. App. 690, 2013 WL 6097990. Because the question of what duty is owed is one of law, we review it de novo. Shook v. Love's Travel Stops & Country Stores, Inc. , 2017 Ark. App. 666, 536 S.W.3d 635.
Carrie was at the hospital to sit for a deposition, so she was a business invitee. A business invitee is one who enters or remains on land for a purpose connected with the business dealings of the owner. Lively v. Libbey Mem'l Physical Med. Ctr., Inc. , 311 Ark. 41, 841 S.W.2d 609 (1992). A property owner has a duty to exercise ordinary care to maintain his or her premises in a reasonably safe condition for the benefit of his or her invitees. Delt v. Bowers , 97 Ark. App. 323, 249 S.W.3d 162 (2007). The property owner is liable if he or she has superior knowledge of an unreasonable risk of harm of which the invitee, in the exercise of ordinary care, does not or should not know. Id. In Arkansas, a landowner generally does not owe a duty to a business invitee if a danger is known or obvious. Young v. Paxton , 316 Ark. 655, 873 S.W.2d 546 (1994) ; Shook , supra . The duty to warn an invitee of a dangerous condition applies only to defects or conditions that are in the nature of hidden dangers, traps, snares, pitfalls and the like, in that they are known to the invitor but not known to the invitee and would not be observed by the latter in the exercise of ordinary care. Id. There is no duty to guard against merely possible, as opposed to probable, harm. Locke, supra.
Carrie had been an employee of the hospital for fifteen years and had walked across the median with its tree roots sticking up many times, including fifteen minutes before she fell and was injured. Carrie testified that she saw the *823 tree roots on the day of her fall, even though there were shadows cast by the tree. Carrie's testimony showed that she was not distracted and was not in a hurry, and she said that she thought she could avoid tripping over the tree roots if she was being careful and paying attention. Her testimony shows that she appreciated the danger of the situation. A dangerous condition is "obvious" when "both the condition and the risk are apparent to and would be recognized by a reasonable man, in the position of the visitor, exercising ordinary perception, intelligence, and judgment." Van DeVeer v. RTJ, Inc. , 81 Ark. App. 379, 386, 101 S.W.3d 881, 885 (2003). "Known" has been defined as "not only knowledge of the existence of the condition or activity itself, but also appreciation of the danger it involves." Id. at 386, 101 S.W.3d at 884. Because the danger was both known and obvious, according to Carrie's own testimony, we hold that the hospital did not owe a duty to warn her of the tree roots in her path. The appellate courts have reversed jury verdicts when no duty was owed to an injured plaintiff. See, e.g. , Bedell v. Williams , 2012 Ark. 75, 386 S.W.3d 493 (negligence); Ken's Disc. Bldg. Materials, Inc. v. Meeks , 95 Ark. App. 37, 233 S.W.3d 176 (2006) (premises liability).
Despite the obvious-danger rule, an owner may continue to owe a duty of care to a business invitee who is forced, as a practical matter, to encounter a known or obvious risk to perform his or her job. Jenkins v. Int'l Paper Co. , 318 Ark. 663, 887 S.W.2d 300 (1994) ; see also Carton v. Mo. Pac. R.R. Co. , 303 Ark. 568, 798 S.W.2d 674 (1990) ; Kuykendall v. Newgent , 255 Ark. 945, 504 S.W.2d 344 (1974). As noted, Carrie was not at the hospital to perform her job as a nurse, but to the extent this exception could apply, the evidence shows that Carrie was not forced to encounter the tree roots. Although Carrie said that she had to cross the median or get in "traffic,"[2] she had earlier testified in her deposition that she could have walked around the tree roots. Also, her witness, Dr. Goins, testified that, instead of walking across the median, he could have walked around the tree and avoided its roots.
Reversed and dismissed.
Klappenbach and Whiteaker, JJ., agree.

The trial court later dismissed the other defendants without prejudice.

Photographs introduced at trial show a circle drive between the median and the hospital's entrance.